BENJAMIN F. MILES & another[1] *vs.* PLANNING BOARD
OF MILLBURY.

No. 87-1118.

Worcester.    April 15, 1988. — August 15, 1988.

Present: ARMSTRONG, BROWN, & DREBEN, JJ.

Further appellate review granted, 403 Mass. 1102 (1988).

*Subdivision Control,* Plan, Decision of planning board, Conditions.

A municipal planning board was without authority, in approving a subdivision plan subject to conditions, to impose on the developer higher standards of construction for sidewalks and curbs than the municipality imposed on its own publicly financed construction. [320]

The provisions of G. L. c. 41, § 81Q, that limit a municipal planning board's powers with respect to standards of construction of ways in privately developed residential subdivisions also limit the board's powers with respect to the installation of utilities within such ways. [321-322]

A municipal planning board was without authority, in approving a subdivision plan subject to conditions, to require a developer to place utility lines underground, where the municipality did not impose such a condition on its own publicly funded utility installations. [322]

CIVIL ACTION commenced in the Superior Court Department on February 12, 1986.

The case was heard by *George C. Keady, Jr.,* J.

*James M. Burgoyne* for the plaintiffs.

*Barbara J. Saint Andre* for Planning Board of Millbury.

ARMSTRONG, J.   The plaintiffs own a six-acre parcel in Millbury which they propose to develop for seven residences on a street ending in a cul-de-sac. The parcel is zoned for industrial use, but the plaintiffs were granted a variance for residential use subject to the "condition[] that they meet the zoning requirements for a residential district." Their subdivision plan was then approved, but the approval was made subject to three conditions to which they object: (1) that the utility lines (electric, telephone, cable) be underground; (2) that a

---

[1] Jean H. Miles.

concrete sidewalk be constructed on one side of the street; and (3) that a sloped granite curbing be installed on both sides of the road and around the cul-de-sac. The last two conditions represent partial waivers by the planning board: its regulations, dating from 1980 and 1981, call for concrete sidewalks on both sides of the street and upright granite curbing, which is more expensive than sloped curbing.

The legal basis for the plaintiffs' challenge is a proviso added to G. L. c. 41, § 81Q, by St. 1981, c. 459: "that in no case shall a city or town establish rules or regulations regarding the laying out, construction, alteration, or maintenance of ways within a particular subdivision which exceed the standards and criteria commonly applied by that city or town to the laying out, construction, alteration, or maintenance of its publicly financed ways located in similarly zoned districts within such city or town."[2]

The proviso derived from a Governor's message to the Legislature, House Doc. No. 6566 (1981), which was based on the Report of the Governor's Commission to Simplify Rules and Regulations (1980) (Commission Report). Part of the Commission Report (recommendation no. 24) focused on the role of government regulations in increasing the cost of new housing by setting standards beyond those necessary for the health and safety of residents. Rejecting the concept of fixing Statewide maximum standards (compare the discussion in the Commission Report concerning sewage disposal regulation, p. 43), the commission recommended a flexible approach "that would limit the standards and criteria for roads and service specifications in subdivision control regulations to those used by the city or town in the construction of its own roads and services for similar levels of usage. For example, specifications for privately developed residential streets and utilities would be

_____

[2] The judge correctly rejected a challenge to the regulations as arbitrary and excessive: underground lines are less subject to storm damage and can reasonably be thought aesthetically preferable to overhead lines, and granite curbs and concrete sidewalks last longer than asphalt. He ruled that the judgment call whether the benefits were worth the higher costs was for the planning board rather than the court.

the same as those used by the city or town for publicly built roads and services, and the same principle would apply to industrial and commercial streets and services as well." Commission Report at 40.

The highway surveyor of Millbury testified that, in his seventeen years in that position (he had been with the town's highway department since 1943), the town's own construction and upkeep of ways had never involved the installation of underground utilities or of granite curbs or concrete sidewalks. All sidewalks and curbs installed by his department, apparently regardless of zoning district, were of asphalt — a less durable but cheaper method of construction. Examples of recent new construction were few in number, because the town itself (as opposed to developers of subdivisions) has done little such work since the 1970's. The examples of reconstruction that were offered in evidence were largely discounted by the judge: Grafton Street, because it was a project constructed under G. L. c. 90, financed fifty percent by the Commonwealth and built to Commonwealth specifications;[3] Holman Road[4] and Farnsworth Court[5] because they were not parts of new residential subdivisions; Gagliardi Way, because it was constructed by the Commonwealth rather than the town.[6] Certain other examples were abandoned after

---

[3] The Mileses' proposed street would connect to Grafton Street, the reconstruction of which spread over several years before and after the 1981 legislation. In the vicinity of the connection Grafton Street formerly had granite curbs and concrete walks, but the reconstruction replaced these with asphalt curbing and an asphalt sidewalk (one side only). The electric lines on Grafton Street are overhead.

[4] Holman Road before reconstruction was a dirt road eight to nine hundred feet long leading to a carpentry school. The town excavated the roadbed and put in a gravel base. The school did the paving. No sidewalks were installed, and the electric line was left overhead. There were no residences fronting on Holman Road at the time of the reconstruction (1982 or 1983), but apparently one or more houses have since been built.

[5] Farnsworth Court goes around (or partly around) Millbury Common. It was too narrow for sidewalks. The plans did not call for curbing (the work was on going at the time of trial), but the highway surveyor testified that if he decided to put curbing in, it would be asphalt.

[6] Gagliardi Way is residential and has since construction become a town way. No sidewalks were constructed.

objection because the construction work was done before the proviso took effect. Other examples were thought irrelevant because the work had been done before the witness's tenure as highway surveyor. The lack of what seemed to be regarded at the trial as perfect examples — post-1981 new construction by the town, with its own money exclusively, in residential subdivisions — was permitted to obscure the fact that developers were being asked to adhere to a standard of construction that the town itself had not followed in its own construction or reconstruction projects for at least the tenure of the highway surveyor (seventeen years) and apparently for some time before that. The most that could be said was that other subdivision developers were being required to and did adhere to the standards being imposed on the Mileses.

There is no suggestion in this case that the conditions put by the board on the Mileses' subdivision approval were either imposed in discriminatory fashion or lacked rational justification. The proviso, however, was intended by the Legislature to limit the authority of a planning board to require more of the developer than the town requires of itself. The standard is not what the town through its boards and officers recognizes as the ideal; rather, it is the standard "commonly applied" by the town in its own construction work. There is nothing in the "commonly applied" standard that makes pre-proviso construction irrelevant, where, as here, there is no evidence that the town imposed the regulations on its own construction. There is nothing in the standard that makes one-hundred percent funding by the town a condition precedent to relevancy. It is true, as the judge emphasized, that the proviso should not be read to constrain the town from upgrading construction standards applicable to ways. The proviso, however, requires that the town must itself be applying the higher standards. Here, it was clear from the testimony of the highway surveyor that the town had not upgraded construction standards applicable to its own work in the five years since the effective date of the proviso. Indeed, in work that was in progress even at the time of trial (see n.4, *supra*), the town was continuing to adhere to the lower standards to which the highway surveyor testified.

What has been said applies clearly to the conditions imposed by the board relative to the sidewalk and the curbing. It is less clear that it applies to the condition requiring underground utility lines.[7] The Governor's commission intended that its proposed legislation apply to utilities. Its calculations of excessive costs typically imposed by regulations included the added costs associated with underground utilities. Commission Report at 42. The commission's own draft legislation, however, was phrased in terms of "the laying out and construction of ways and streets within a subdivision" (*id.* at 40), and the legislation recommended by the Governor (House Doc. No. 6566, appendix L) rephrased this as "the laying out, construction, alteration, or maintenance of ways within a particular subdivision." The Legislature adopted this phraseology.

While the question is close, we think the proviso can be read and, in view of the clear intent, should be read to encompass utilities constructed within the ways of subdivisions. In new construction, utilities typically follow the routes of ways, *Sansoucy* v. *Planning Bd. of Worcester*, 355 Mass. 647, 649 (1969), and the proviso itself was adopted only six years after the Legislature had (by St. 1975, c. 610) amended G. L. c. 187, § 5, to decree that rights of ingress and egress along private ways carry by implication the right to install utilities "in, on, along, under and upon" such ways. See *Nantucket Conservation Foundation, Inc.* v. *Russell Management Inc.*, 380 Mass. 212, 212-215 (1980). Similar rights to install utilities pertain by common law to public highways. *Cheney* v. *Barber*, 198 Mass. 356, 361-363 (1908); *Crullen* v. *Edison Elec. Illuminating Co.*, 254 Mass. 93, 94 (1925). *Opinion of the Justices*, 297 Mass. 559, 562 (1937). The installation of utilities is, in practice, an integral part of the construction of ways. Of the several functions of planning boards, the most central is ensuring that subdivisions are not constructed without adequate and safe provision for vehicular access, services (including

---

[7] There is no suggestion in the record that Millbury has adopted by-laws under G. L. c. 166, §§ 22C or 22D, mandating the use of underground lines for future installation (§ 22C) or the burying of existing utility lines (§ 22D).

utilities), water, drainage, and sewerage. G. L. c. 41, § 81M. *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 153-154 (1959). *Rounds* v. *Water & Sewer Commrs. of Wilmington*, 347 Mass. 40, 46 (1964). *Sansoucy* v. *Planning Bd. of Worcester*, 355 Mass. at 649. *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801, 807 (1978). The close connection between ways and utilities, coupled with a planning board's preeminent role in determining the standards for adequacy of each, persuades us that legislation restricting a planning board's power with respect to the construction of ways should be read to restrict its powers with respect to the installation of utilities within the ways, if that is, as here, the manifest intent of the Legislature.

The Mileses' plan, as submitted for approval, apparently contemplated the construction of overhead utility lines, the construction of an asphalt sidewalk on one side of the road, and the construction of hot asphalt curbing on both sides of the road and cul-de-sac. The planning board approved the construction of a sidewalk on one side only, and in other respects the plan complied with the standards commonly applied by the town in its own, publicly financed construction, reconstruction and alteration of ways. The three conditions required more of the Mileses and were thus improper under G. L. c. 41, § 81Q.

A new judgment must be entered declaring that the three conditions were in excess of the authority of the planning board.

*So ordered.*