BENJAMIN F. MILES & another[1] *vs.* PLANNING
BOARD OF MILLBURY.

Worcester.  December 8, 1988. — April 5, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Subdivision control*, Plan, Decision of planning board, Conditions.

The plaintiff in a civil action seeking review of a decision of a municipal
   planning board imposing three conditions on the plaintiff's proposed
   subdivision did not demonstrate that the board exceeded its authority
   under G. L. c. 41, § 81Q, in imposing the conditions. [490-491]
A municipal planning board was held to have wide discretion in determining
   under G. L. c. 41, § 81Q, what building standards were "commonly
   applied" by the municipality in "similarly zoned districts" within the
   municipality, when setting standards under that statute for any particular
   stage of construction in privately developed subdivisions. [491-495]
The provisions of G. L. c. 41, § 81Q, that limit a municipal planning
   board's power to prescribe standards for construction of ways in privately
   developed residential subdivisions also limit the board's powers with
   respect to the installation of utility lines within such ways. [495-496]

CIVIL ACTION commenced in the Superior Court Department
on February 12, 1986.

The case was heard by *George C. Keady, Jr.*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

· *James M. Burgoyne* for the plaintiffs.

*Elizabeth A. Lane* for the defendant.

ABRAMS, J. The planning board of Millbury (board) approved
the plaintiffs' plan of subdivision[2] subject to three conditions.

---

[1] Jean H. Miles.

[2] A subdivision is defined as "the division of a tract of land into two or
more lots." G. L. c. 41, § 81L (1986 ed.). When developers propose to
subdivide a tract of land, as plaintiffs do here, they are generally required
to submit a plan of subdivision to the town or city planning board for
approval. G. L. c. 41, § 81O. See generally G. L. c. 41, §§ 81K-81GG.

First, a concrete sidewalk had to be constructed on one side of the street. Second, a sloped granite curbing had to be installed on both sides of the street. Third, all utility lines had to be buried underground. The plaintiffs appealed to the Superior Court, alleging that the board exceeded its statutory authority under a proviso added to G. L. c. 41, § 81Q, by St. 1981, c. 459, in imposing the three conditions. After hearing, the judge concluded that the board did not exceed its authority in imposing the three conditions. The plaintiffs then appealed to the Appeals Court, which reversed the judgment of the Superior Court. See 26 Mass. App. Ct. 317 (1988). We granted the board's application for further appellate review. We affirm the judgment of the Superior Court.

The plaintiffs are real estate developers engaged in the construction of homes in Millbury. The plaintiffs submitted a plan to subdivide and develop six acres of land into seven residential lots ending in a cul-de-sac.[3] The three conditions accord with the board's rules and regulations adopted pursuant to G. L. c. 41, § 81Q.[4] The plaintiffs argue that "the [three] conditions exceeded the standards and criteria commonly applied by Millbury to the construction and/or maintenance of its publicly financ[ed] ways." Therefore, the plaintiffs conclude that the board exceeded its statutory authority in imposing such conditions and the Superior Court judge erred in not so concluding. We do not agree.

The burden of proof is on the plaintiffs to prove that the planning board exceeded its authority in imposing the three conditions. *Strand* v. *Planning Bd. of Sudbury,* 7 Mass. App.

---

[3] The land was originally industrially zoned, but the plaintiffs received a variance for residential use subject to the condition that the plaintiffs "meet the zoning requirements for a residential district." There is no issue before us as to the propriety of this variance.

[4] The conditions represent a partial waiver by the board of its strict rules and regulations concerning a new residential subdivision. The board's rules actually require the installation of sidewalks on both sides of the street and the installation of upright curbing, as opposed to the less expensive sloped curbing. A board may waive strict compliance with its rules and regulations, although it is not required to do so. See, e.g., *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. 79, 85 (1976).

Ct. 935, 936 (1979). To meet their burden, the plaintiffs point to the following four examples of "construction and/or maintenance" which occurred after 1982 to prove that the board exceeded its own building standards in imposing the three conditions. (1) The town reconstructed Holman Road, a dirt road; now, a paved street runs to a carpentry school at the street's end. There are no curbs or sidewalks on Holman Road, and the electric wires are not buried underground. (2) The town reconstructed Farnsworth Court, a street located in a commercially zoned district. Farnsworth Court does not have granite curbing or sidewalks. (3) The Commonwealth reconstructed Gagliardi Way, now a town road, as part of the reconstruction of Route 146. Gagliardi Way also does not have granite curbing or sidewalks. (4) The Commonwealth contracted to reconstruct Grafton Street with joint State, county, and local funding, pursuant to G. L. c. 90. Grafton Street was rebuilt to Commonwealth specifications. This street does not have granite curbs or concrete sidewalks, and the electric utility lines are not buried underground. The Superior Court judge concluded that these examples were not decisive in determining whether the rules and regulations regarding curbs, sidewalks and electric lines exceeded those "commonly applied" by the town within the meaning of G. L. c. 41, § 81Q. He reasoned that there were sufficient differences between the plaintiffs' project and the four examples cited by the plaintiffs that the board could infer that the three conditions were consistent with the proviso. We agree. We turn to the proper interpretation of the proviso in G. L. c. 41, § 81Q.

General Laws c. 41, § 81Q, as amended through St. 1981, c. 459, provides that the planning boards of cities and towns should adopt "reasonable rules and regulations relative to subdivision control." "In establishing such requirements regarding ways, due regard shall be paid to the prospective character of different subdivisions, whether open residence, dense residence, business or industrial, and the prospective amount of travel upon the various ways therein, and to adjustment of the requirements accordingly; *provided, however*, that in no case shall a city or town establish rules or regulations regarding the

laying out, construction, alteration, or maintenance of ways within a particular subdivision which exceed the standards and criteria commonly applied by that city or town to the laying out, construction, alteration, or maintenance of its publicly financed ways located in similarly zoned districts within such city or town" (emphasis supplied).

The plaintiffs argue that the four examples of post-1982 reconstruction of town roads, as well as the building standards of the town in the early 1970's, did not fulfil the three contested conditions.[5] Thus, the conditions imposed exceeded those commonly applied by Millbury. The board argues that the proviso in G. L. c. 41, § 81Q, requires only that the board adhere to standards used in similar town building, and that the examples cited by the plaintiffs are not relevant, because they differ substantively from the plaintiffs' proposed subdivision. According to the board, the examples cited by the plaintiffs are instances of town reconstruction of already existing streets, reconstruction of commercially zoned streets, and reconstruction done by the Commonwealth, as opposed to town building. Therefore, the board argues, the Superior Court judge was correct in concluding that the building standards for the streets were inapplicable. We agree with the board.

As an initial matter, the proviso requires adherence to standards "commonly applied" by the town. "In construing a statute, words are to be accorded their ordinary meaning and approved usage." *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983). The standards "commonly applied" by the town today may not be the standards which were applicable in the early 1970's. Thus, there was no error in the judge's determination that examples

---

[5] The Appeals Court opinion, 26 Mass. App. Ct. at 319-320, suggests that construction done during the 1970's was relevant to determining what standards were "commonly applied" by the town. The plaintiffs did not make such an argument in their brief, and have submitted no supplemental brief to make this argument upon further appellate review. At oral argument, however, the plaintiffs argued that a municipality should be constrained by G. L. c. 41, § 81Q, to the standards used in its last construction, no matter how long ago, until such time as it chooses to build again or to adopt different standards for its own projects. For the reasons stated in the opinion, we reject that argument.

of early 1970's construction were not relevant. The judge correctly determined that G. L. c. 41, § 81Q, does not require "a town to be forever fixed regarding its standards, only that once such standards are adopted, they be fairly applied. . . . [Otherwise], a municipality could never upgrade its subdivisions." The judge also concluded that the plaintiffs failed to prove "that the board has not commonly applied these conditions to similar projects funded by the town . . . since . . . 1982."[6]

The statute is clear that the town need look only to its standards in "similarly zoned districts." Thus, there was no error in not considering the standards of Farnsworth Court, which was commercially zoned. Further, the statute applies only to town standards in connection with "its publicly financed ways." This clause ensures that the town will be bound only by projects which are financed by the town in such a manner that the projects are built to town specifications. Examples of construction done with Commonwealth funding and built to Commonwealth specifications, therefore, were not relevant. Thus, two of the plaintiffs' four examples (Gagliardi Way and Grafton Street) were not applicable.

The language used in the statute, when read as a whole, see *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975), emphasizes that different stages of town construction may be compared to the corresponding stages of private construction. The statute mandates that the board look to the "prospective character" of the neighborhood. The proviso itself emphasizes that rules and regulations regarding "the laying out, construction, alteration, or maintenance of ways" may not exceed those commonly applied by the town to the "laying out, construction, alteration, or maintenance" of its own ways. The statute thus particularizes each stage of road building. We think that the Legislature in its itemization of these stages intended to give town boards discretion to compare particular types of

---

[6] As the Appeals Court noted, "[t]here is no suggestion in this case that the conditions . . . were either imposed in discriminatory fashion or lacked rational justification." 26 Mass. App. Ct. at 320.

town building to the corresponding types of private building. This flexibility is necessary as a practical matter, because boards may be guided by different policy considerations in imposing different standards on the laying out of new streets as opposed to the reconstruction of already existing streets.[7] Thus, the plaintiffs cannot rely on the example of Holman Road, because that road was reconstructed rather than newly constructed.

In sum, what the proviso requires is that the board compare like town building to like private building.[8] None of the plaintiffs' examples met that standard. A town board is not forced

---

[7] The range of improvements which could be provided to a street during reconstruction might be limited by space constraints due to preexisting structures and by other such considerations which are not present when a new road is laid. A town that wishes to upgrade its new streets is not required to meet those standards just to reconstruct other streets. For example, according to the plaintiffs' argument, if a town wished to require all public or private building of new streets to have electric utility wires buried underground, the town would have to bury electric wires of old streets underground each time it reconstructs a preexisting street. The proviso in G. L. c. 41, § 81Q, does not require such a result.

[8] The available legislative history supports the interpretation that boards are to be afforded considerable discretion in deciding to compare only relevant town building in applying rules to private building. The proviso was inserted by St. 1981, c. 459. It was based on the Governor's message to the Legislature, House Doc. No. 6566 (1981), which in turn was based on the Report of the Governor's Commission to Simplify Rules and Regulations (1980) (commission report). The commission report, in its findings emphasized what it viewed as the unfortunate role played by local government regulations in increasing the cost of new housing by setting standards beyond those necessary for the health and safety of residents. The commission recommended a flexible approach "that would limit the standards and criteria for roads and service specifications in subdivision control regulations to those used by the city or town in the construction of its own roads and services *for similar levels of usage.* For example, specifications for privately developed residential streets and utilities would be the same as those used by the city or town for publicly built roads and services, and the same principle would apply to industrial and commercial streets and services as well." (Emphasis supplied.) Commission Report at 40. Thus, the town's flexibility is to be constrained only by a comparison of standards which the town employs "for similar levels of usage." Because the streets cited as examples by the plaintiffs were not examples of "similar levels of usage," the streets do not show what standards were "commonly applied" within the meaning of G. L. c. 41, § 81Q.

by G. L. c. 41, § 81Q, to compare the standards of old town construction to new private construction; or the standards of town reconstruction to the private laying out of new streets; or the standards of town building in commercially zoned areas to private building in residential areas. The town may wish to vary its own standards between reconstruction and new construction, or between commercially zoned neighborhoods and residential neighborhoods. The board enjoys wide discretion in determining how recent the relevant town building must be, whether the town building was in a like-zoned area, and whether the town building was at a sufficiently similar stage. See *Arrigo* v. *Planning Bd. of Franklin,* 12 Mass. App. Ct. 802, 809 (1981).

The board argues in its supplemental brief that regulations regarding laying of utility lines are exempt from the constraints of the proviso of G. L. c. 41, § 81Q, because they do not relate to "ways." We do not agree. As the Appeals Court noted, ways and utilities are inextricably linked. 26 Mass. App. Ct. at 321-322. "As a matter of course, utility wires are placed in ways. . . . [T]he board may make requirements for the services that as a matter of course will be installed in the ways being approved even if furnished by a regulated utility . . . . The concern is not only with aesthetics, but also with providing ways that are 'safe and convenient for travel' and 'securing safety in the case of fire . . . [or] other emergencies.' G. L. c. 41, § 81M." (Citations omitted.) *Sansoucy* v. *Planning Bd. of Worcester,* 355 Mass. 647, 649 (1969). Rights of ingress and egress along private ways imply the right to install utilities "in, on, along, under, and upon" such ways. G. L. c. 187, § 5. *Nantucket Conservation Found.* v. *Russell Management, Inc.,* 380 Mass. 212, 212-215 (1980). At common law, similar rights to install utilities attached to use of public highways. *Opinion of the Justices,* 297 Mass. 559, 562 (1937). *Crullen* v. *Edison Elec. Illuminating Co.,* 254 Mass. 93, 94 (1925). Therefore, we conclude that rules and regulations regarding utility lines are subject to the limitations of the proviso in G. L. c. 41, § 81Q, regarding ways. Here, however, the board did not abuse its discretion in concluding that no examples of stand-

ards "commonly applied" by the town in building new residential subdivisions were available. Therefore, the Superior Court judge correctly affirmed the board's decision.

*Judgment of the Superior Court affirmed.*