Adams *v.* Planning Board of Westwood.

DANIEL T. ADAMS & others[1] *vs.* PLANNING BOARD OF
WESTWOOD & others.[2]

No. 03-P-1072.

Suffolk. May 13, 2004. - August 31, 2005.

Present: GREENBERG, PORADA, & GELINAS, JJ.[3]

*Subdivision Control,* Access ways, Decision of planning board. *Real Property,*
Easement. *Easement.*

In a dispute regarding access rights to land abutting certain plaintiffs' property
for which the individual defendant obtained subdivision approval from the
defendant town planning board (board), this court concluded that the
individual defendant owned the fee in portions of the roadway at the center
of the parties' dispute [387-389], and that he held an easement over the
roadway by necessity or implication benefitting the subdivision land,
which included a right to lay utilities pursuant to G. L. c. 187, § 5
[389-392]; moreover, the board did not exceed its authority in approving
the definitive subdivision plan on certain conditions, with the exception of
its having reserved a right to review certain issues [392-393].

CIVIL ACTION commenced in the Land Court Department on
June 4, 1999.

The case was heard by *Leon J. Lombardi,* J.

*William M. O'Brien* for Frank Gobbi, Jr.

*Stephen Gordet* for the plaintiffs.

GELINAS, J. Based on his conclusion that the defendant Frank
Gobbi, Jr., has no access rights serving the land for which he
obtained subdivision approval from the defendant planning
board of Westwood (board), a Land Court judge annulled the
board's approval. We conclude that Gobbi owns the fee in por-

[1]Sandra L. Adams, Lori Amara, Kevin J. Becker, and Ann N. Becker.

[2]Frank Gobbi, Jr., individually and as executor of the estate of Frank Gobbi.

[3]The case was argued before Justices Greenberg, Porada, and Gelinas. Fol-
lowing the retirement of Justice Porada, Chief Justice Armstrong was added to
the panel and participated in this decision.

tions of the roadway at the center of the parties' dispute (disputed way) and that he holds an easement benefiting the subdivision land. We also conclude that the judge correctly determined the propriety of various conditions imposed by the board on its approval.[4]

We recite facts and procedure necessary to an understanding of the case, reserving certain details for our discussion of the issues. A sketch depicting the various parcels and ways is attached as an Appendix to assist the reader.

In December of 1998, Gobbi filed with the board a plan entitled "Presidential Heights Definitive Subdivision Plan of Land in Westwood, MA" (definitive plan), proposing a subdivision of land located off High Street in Westwood into two lots. Gobbi also submitted an application for approval of the definitive plan. That plan shows a proposed forty-foot way from High Street to the subdivision, encompassing the disputed way. The way services the two proposed subdivision lots, one containing 40,202 square feet and a second containing 676,690 square feet (approximately fifteen and one-half acres).

Gobbi's application requested that the planning board waive certain rules and regulations to allow the submission without a traffic study; to allow a roadway over the disputed way twenty-four feet in width; and to allow construction of the roadway without a sidewalk. The definitive plan indicated that retaining walls were to be constructed within the disputed way in front of two lots, lot A and the lot owned by the Adamses (Adams lot), which Gobbi did not own, abutting the way.

The board approved the definitive plan in May of 1999, and filed its decision with the Westwood town clerk. The decision

[4]This appeal arises out of the consolidation of three actions. In the first action, Daniel T. and Sandra L. Adams and Richard R. and Nancy R. Mobley, Lori Amara, and Kevin J. and Ann N. Becker appealed the subdivision plan approval to the Land Court, pursuant to G. L. c. 41, § 81BB. The second action is Gobbi's challenge, filed in the Superior Court, of the board's imposition of certain conditions to the approval of the subdivision plan and the board's reservation of issues concerning the retaining wall and the drainage for future consideration. In the third action, filed in the Land Court, the Adamses sought a declaration of the rights of the parties in the disputed right of way, pursuant to G. L. c. 231A. The judge was specially designated to hear and determine Gobbi's Superior Court complaint. See G. L. c. 211B, § 9.

granted certain waivers and imposed several conditions, the most significant of which required that the roadway would have a paved width of twenty feet; that there could be no further subdivision of the lot containing 676,690 feet, with any further modifications or amendments of the plan to be in accordance with G. L. c. 41, § 81W, which authorizes future board review in such circumstances; and that the design, location, and construction of any retaining walls and the drainage systems would later be reviewed and approved by the board in consultation with the town engineer.

Three lots owned by others (lot A, lot 2, and the Adams lot[5]) directly abut the disputed way prior to its reaching the Gobbi land. These lots, and the disputed way, first appear on a plan entitled "Plan of Land in Westwood, Mass.," dated September 24, 1957, and recorded in 1958 with the Norfolk County registry of deeds at book 3611, page 596. The plan was filed in conjunction with an exchange of deeds (the 1957 deeds) between and among three parties, then owners of the abutting land. These deeds form the basis of the parties' grievances in the various actions subject to this appeal.

Lots A and 2 abut High Street as well as the disputed way. The disputed way provides the sole access from High Street to the Adams lot. The Adamses have a deeded easement over the disputed way to their lot, as do the owners of the other two lots. The Adamses maintain a driveway from the disputed way to a garage and parking area at the northeasterly side of the home on the lot. Currently, the traveled portion of the disputed way terminates at the end of the Adamses' driveway and does not continue to the northwesterly boundary of the Adams lot or to the Gobbi lot.

Title to Gobbi's land derives ultimately from Perley and Margaret Coombs. Margaret Coombs acquired all of the land in question, including the Gobbi land and what are now lots A, 2, and the Adams lot, and including what would become the disputed way, in 1927, later conveying the premises through a

---

[5]The Franklins owned lot A, the Mullenses owned lot 2, and the Coombses owned what is now the Adams lot and the land now owned by Gobbi. See discussion and Appendix, *infra*.

straw, so that title might be in herself and her husband, Perley, as tenants by the entirety.

The Coombses were also parties to the 1957 exchange of deeds. That exchange was designed to cure a nine-foot zoning set back encroachment by the house on the Adams lot (then owned by the Coombses), by relocating a pre-existing roadway over the Coombses' land.

After a trial, a Land Court judge determined that by retroactive operation of the derelict fee statute, G. L. c. 183, § 58, which had been inserted originally by St. 1971, c. 684, §§ 1, 2,[6] the owners of lot A, lot 2, and the Adams lot owned the entire fee in the right of way and that Gobbi had no interest therein. The judge further ruled that Gobbi holds no right to access his land from High Street.[7] The judge concluded that the board had acted in excess of its authority in approving the subdivision and annulled the board's approval.

The judge also ruled that the board did not exceed its authority in imposing the conditions challenged by Gobbi, but ruled that the board impermissibly had reserved for future determination the issues of the design, location, and construction of any retaining walls, and the drainage system for the proposed development.

On appeal, Gobbi argues that the judge erred in concluding that he has no right of access over, or ownership of, the disputed way and in upholding the conditions imposed by the board.

---

[6]General Laws c. 183, § 58, as amended through St. 1990, c. 378, §§ 1, 2, provides: "Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

[7]Consistent with his conclusion that Gobbi holds no right to use the right of way, the judge ruled that Gobbi likewise has no right, pursuant to G. L. c. 187, § 5, to install utilities.

1. *Fee in the disputed way.* We examine the parties' respective rights in the fee of the disputed way and determine to what extent the derelict fee statute, G. L. c. 183, § 58, affects the parties' rights in the way. In assessing the rights of the parties to the fee in the disputed way, we begin by observing that, immediately prior to the exchange of the 1957 deeds, the Coombses owned the entirety of the fee in the way as then located.[8] We turn, then, to examination of the three 1957 deeds exchanged, as we have previously noted, to relocate the way by approximately nine feet.[9]

The first of the three deeds ran from the Mullenses and the Franklins to the Coombses, and conveyed to the Coombses land largely contained within what is now the Adams lot.[10] The land purporting to be conveyed consisted largely of land the Coombs already owned. Since neither the Mullenses nor the Franklins owned any portion of the fee in the way abutting the land conveyed under that deed, the derelict fee statute is not implicated in this conveyance.

The second of the three deeds ran from the Coombses and the Mullenses, as grantors, to the Franklins (who, at that time, owned lot A, as shown in the attached sketch).[11] The land conveyed under the deed consisted largely of land the Franklins already owned; in fact the parcel described in the deed included slightly less frontage along High Street than the Franklins already owned, because it excluded the strip of nine feet within the newly-relocated right of way. The Coombses did, however, convey to the Franklins a strip of land abutting the northwesterly

[8]The only parcels abutting the way, lot 2 and lot A, conveyed prior to 1957 were conveyed under deeds that made no reference to the way as a boundary; the land that had by 1957 become the roadway was described in those instruments as "other land of Margaret C. Coombs." A third parcel was conveyed to a third party under a 1945 deed that made reference to the way as a boundary, but that parcel was conveyed back to the Coombses shortly thereafter.

[9]Each of the three deeds included an express grant of rights to use the disputed way.

[10]It included a small additional sliver of land along the southeastern boundary of the Adams lot, between that parcel and the Mullenses' land, but that fact is irrelevant for purposes of the issues in this case.

[11]As the Mullenses held no interest in the land conveyed under that deed, we consider the effect of the derelict fee statute only on land owned by the Coombses.

boundary of lot A. The deed described the land as bounded by the way. The effect of that deed, under the derelict fee statute, was to convey to the Franklins the fee in the way abutting that strip, to the centerline of the way.[12] The Franklins retained ownership of the land within the way that they previously had owned, subject to the easement rights they granted to the Coombses and the Mullenses in the other two 1957 deeds.

The third of the three deeds ran from the Coombses and the Franklins to the Mullenses, and again conveyed land consisting largely of land the Mullenses already owned (lot 2, as shown on the attached sketch). However, it did include approximately nine feet of land within the original roadway owned by the Coombses and described the land conveyed as bounded by the way. By operation of the derelict fee statute, the deed passed to the Mullenses the interest of the Coombses in the fee of the way abutting lot 2.[13]

Upon exchange of the 1957 deeds, then, (i) the Franklins owned the fee in a strip of the disputed way, approximately nine feet wide, abutting lot A, and they owned to the centerline of the way adjacent to the strip of additional land along their northwest border conveyed to them by the Coombses; (ii) the Mullenses owned the fee in the disputed way abutting the newly configured lot 2, to the portion of the way retained by the Franklins; and (iii) the Coombses owned the fee in the way abutting the Adams lot, again to the portion retained by the Franklins (and again only to the centerline of the portion abutting the strip along the Franklins' northwestern border).

In 1958, the Coombses conveyed to Janice P. Grenon (Gobbi's predecessor in interest) all of their remaining land except the Adams lot, under a deed that simply excluded the Adams lot and the other land (including that conveyed to the Mullenses and Franklins) they previously had conveyed. Accordingly, Grenon acquired thereby the interest of the Coombses in the fee of the disputed way abutting the Adams lot. In 1959, the

---

[12]As the Coombses retained land opposite the land conveyed, by the terms of the statute the conveyance went only to the centerline of the way.

[13]Because the Coombses owned no land opposite the land conveyed, the deed passed their interest in the fee across the entire way, and not merely to its centerline.

Coombses conveyed the Adams lot to Samuel J. Adelman (Adams's predecessor in title) under a description "by" the disputed way. However, since the Coombses no longer held any interest in the fee of the disputed way, the derelict fee statute had no effect on the interests conveyed under the 1959 deed to Adelman. Gobbi, rather than Adams, owns the fee formerly held by the Coombses in the disputed way abutting the Adams lot, and the judgment declaring the rights of the parties must be modified accordingly.

2. *Easement rights in the disputed way.* We now turn to Gobbi's claim that he holds easement rights over the disputed way for the benefit of his land. While it is true that since passage of the derelict fee statute, G. L. c. 183, § 58, see note 6, *supra,* "extrinsic evidence may not be used to prove the grantor's intent to retain [a] fee in [a] right of way," *Rowley* v. *Massachusetts Elec. Co.,* 438 Mass. 798, 804 (2003), extrinsic evidence is available to determine the existence, nature, scope, and extent of easement rights in a way; the derelict fee statute pertains only to the question of ownership of the fee. With respect to the existence of an easement, we look, rather, to the intention of the parties regarding the creation of the easement or right of way, determined from "the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable," *Boudreau* v. *Coleman,* 29 Mass. App. Ct. 621, 629 (1990), to determine the existence and attributes of a right of way.

"The extent of an easement depends on the circumstances of its creation." *Mugar* v. *Massachusetts Bay Transp. Authy.,* 28 Mass. App. Ct. 443, 444 (1990). "When created by conveyance, the grant or reservation 'must be construed with reference to all its terms and the then existing conditions so far as they are illuminating.' " *Ibid.,* quoting from *J.S. Lang Engr.* v. *Wilkins Potter Press,* 246 Mass. 529, 532 (1923). See *Hewitt* v. *Perry,* 309 Mass. 100, 105 (1941) (extent of an easement is determined by the language of the grant, construed in light of attending circumstances).

The circumstances surrounding the exchange of the 1957

deeds, as noted above and as reflected in the record and as found by the trial judge, establish that the transfers in 1957 were meant to address a zoning setback issue on one of the lots by relocating the way to add approximately nine feet to the Adams lot (then owned by the Coombses).[14] Nothing in the transfers indicated an intent to extinguish access to other land of the Coombses, or otherwise alter the Coombses' access rights from High Street to their remaining land, i.e., all land the Coombses owned after the 1957 deeds. Moreover, the language of the deeds is general and not restrictive, either as to use or as to extent and scope. In the words of the deeds, each grantee is granted "a full and free right of way over right of way, as shown on [the 1957] plan, to be used in common with others for such purposes as such rights of way are customarily used." Nothing in the language of the deeds suggests a limitation of the Coombses' rights in the way for the benefit of their remaining land. In addition, the Coombses, as the owners of the fee in all but a slight portion of the disputed way, did not have any need or reason for language reserving a right of way over their own land for the benefit of their remaining land.[15] Finally, we note that a conveyance of land that renders the grantor's remaining land landlocked ordinarily gives rise to an easement by necessity, based on the presumed intention of the grantor to retain access to his remaining land. See *Bedford* v. *Cerasuolo*, 62 Mass. App. Ct. 73, 77 (2004). Unlike the situation in *Boudreau* v. *Coleman*, 29 Mass. App. Ct. at 629, there is ample evidence that at the time of the 1957 transfers, the Coombses' remaining land would be landlocked without use of the disputed way. See *id.* at 630 (reasonable necessity is an important element to consider in determining if it was the presumed intent of the parties to a deed to create an easement). Accordingly, though

[14]The conveyances as shown in part 1, *supra*, also slightly altered a boundary between the lots of Coombs and Mullens, slightly altered a boundary between the lots of Coombs and Franklin, and conveyed a parcel of land from Coombs to Franklin, beyond the terminus of the disputed way.

[15]Indeed, so long as the Coombses retained ownership of the fee in the right of way, any language purporting to create an easement benefiting the Coombses' own land would have been of no effect. See *Goldstein* v. *Beal*, 317 Mass. 750, 757 (1945). See also *Cheeper* v. *Graves*, 32 Mass. App. Ct. 601, 606 (1992).

the 1957 deeds created no express rights in the disputed way for the benefit of the remaining Coombs land, to whatever extent the deeds operated to convey the fee in the way to others, we view them as giving rise to an easement by necessity or implication for the benefit of the remaining Coombs land.[16]

3. *Right to install utilities.* Gobbi's contention that he is entitled, under G. L. c. 187, § 5,[17] to install utilities in the disputed way, combined with our conclusion that he holds an easement by implication or necessity over that portion of the disputed way not retained by the Coombses for the benefit of his land, requires us to address a question not resolved: whether the statute benefits an easement arising by implication or necessity and not express grant. Compare *Estes* v. *DeMello*, 61 Mass. App. Ct. 638, 641-642 n.9 (2004) (whether an easement by estoppel benefits from G. L. c. 187, § 5, has not been "squarely addressed"). We conclude that it does.

The right to lay utilities in a way does not arise as a necessary incident to the right to pass and repass over the way. See *Nantucket Conservation Foundation, Inc.* v. *Russell Mgmt., Inc.*, 2 Mass. App. Ct. 868, 868 (1974), and cases cited therein. Any such right (beyond rights contained in language of express grant or reservation) arises solely by operation of G. L. c. 187, § 5. In *Cumbie* v. *Goldsmith*, 387 Mass. 409, 411-412 n.8 (1982), the Supreme Judicial Court concluded that G. L. c. 187, § 5, does not authorize the holder of a prescriptive easement to lay utilities in the land burdened by the easement. That conclusion rested in part on the language of the statute itself, which applies to "[t]he owner or owners of real estate abutting on a private

---

[16]Although the subsequent deed from the Coombses to Grenon made no reference to rights to pass over the disputed way, none was necessary to transfer the rights. See *Cheeper* v. *Graves*, *supra* at 603, 605; G. L. c. 183, § 15.

[17]The statute, G. L. c. 187, § 5, as amended through St. 1997, c. 164, §§ 280, 281, provides in part that "[t]he owner or owners of real estate abutting on a private way who have by deed existing rights of ingress and egress upon such way or other private ways shall have the right by implication to place, install or construct in, on, along, under and upon said private way or other private ways pipes, conduits, manholes and other appurtenances necessary for the transmission of gas, electricity, telephone, water and sewer service, provided such facilities do not unreasonably obstruct said private way or other private ways . . . ."

way who have *by deed* existing rights of ingress and egress upon such way" (emphasis supplied). G. L. c. 187, § 5. It also rested on the very nature of a prescriptive easement:

> " '[t]he extent of an easement arising by prescription, unlike an easement by grant . . . is fixed by the use through which it was created. . . . [T]he use under which a prescriptive interest arises determines the general outlines rather than the minute details of the interest. . . . [Nevertheless,] the variations in use cannot be substantial; they must be consistent with the general pattern formed by the adverse use.' "

*Cumbie* v. *Goldsmith, supra* at 411-412 n.8, quoting from *Lawless* v. *Trumball,* 343 Mass. 561, 562-563 (1962). In *Nylander* v. *Potter,* 423 Mass. 158, 160 n.6 (1996), the court in dictum similarly expressed its view that the statute would not entitle an abutter to lay utilities in a way that has been discontinued as a public way.

We conclude that the present case stands differently. By contrast to the rights in *Cumbie* v. *Goldsmith, supra,* which arose by prescription and were limited to the uses that created them, or the circumstances in *Nylander* v. *Potter, supra* at 160 n.6, 162-163, in which no easement rights arose at all and the claim of rights did not rest on any deed, Gobbi's easement rights in the disputed way arise by implication or necessity, based on the presumed intention of the parties to the 1957 deeds.[18] See *Bedford* v. *Cerasuolo,* 62 Mass. App. Ct. at 567. In that respect, we consider Gobbi to hold his rights in the way "by deed" within the meaning of the statute.[19]

4. *Planning board conditions.* Gobbi objects to certain conditions imposed by the planning board on its approval of his

---

[18]We note again that with respect to the upper end of the disputed way, Gobbi, for the most part, owns the fee with the unquestionable right to install utilities.

[19]Even if the statute did not apply by its terms, we note the general rule that an easement carries with it every right necessary for its enjoyment. *Sullivan* v. *Donohoe,* 287 Mass. 265, 267 (1934). Though, as noted, such rights did not include at common law the right to lay utilities, the continued vitality of that rule is subject to question. See *Nantucket Conservation Foundation, Inc.* v. *Russell Mgmt., Inc.,* 380 Mass. at 219.

subdivision plan.[20] We agree with the trial judge that the reduction in pavement width, and the limitation on the number of lots, were within the board's authority. The board's action reflected a conscious decision to reduce the pavement width in consideration of other waivers requested by Gobbi, the pre-existing condition of the disputed way, the limited number of lots to be served by the proposed roadway, the impact on the surrounding property, and the intent and purposes of the subdivision control law. See *Miles* v. *Planning Bd. of Millbury*, 404 Mass. 489, 490 n.4, (1989); *Meyers* v. *Planning Bd. of Westport*, 29 Mass. App. Ct. 167, 170-171 (1990). Furthermore, G. L. c. 41, § 81R, specifically authorizes the board to limit the lots on which buildings may be erected and to place such restrictions on the definitive plan.

The trial judge also correctly concluded that the requirement that the design, location, and construction of any retaining walls and drainage system be reviewed and approved by the board in consultation with the town engineer improperly reserved to the board for future decision those issues of substance. See *Weld* v. *Board of Appeals of Gloucester*, 345 Mass. 376, 378-379 (1963). Cf. *Miles* v. *Planning Bd. of Millbury*, 29 Mass. App. Ct. 951 (1990). The board's decision approving the definitive plan was therefore appropriately annulled.

5. *Conclusion.* Gobbi holds a right of way by implication or necessity over the disputed way, and owns the fee in a portion of the northerly end of the right of way. Gobbi also has the right to install utilities in the disputed way to serve the Gobbi land. Adams has no fee interest in the right of way, but has easement rights in the right of way for access to the Adams lot as set forth in the 1957 deed from the Mullens and Franklins to Coombs. The Mullens and their successors own a portion of the fee in the right of way at its southerly end and have rights to use the way as described in the 1957 deed from Coombs and Franklins to Mullens. The Franklins and their successors own

---

[20]The conditions include: (1) reduction in the pavement width to twenty feet; (2) limitation of two buildable lots on the entire area, with the further requirement that the two lot maximum condition be noted on the definitive plan; and (3) requirement for review and approval by the planning board, in consultation with the town engineer, of the design location and construction of any retaining walls and drainage systems.

the fee in the portion of the disputed way retained by the Franklins immediately abutting lot A and have rights to use the way as contained in deed from Coombs and Mullens to Franklin in 1957. Finally, the board did not exceed its authority in approving the definitive subdivision plan, and the conditions established, with the exception of the reserved right to review issues with respect to the retaining wall and the drainage system, were appropriate.

The judgment is to be modified to declare Gobbi's rights in the disputed way as described in this opinion, and is otherwise affirmed.[21] The case is remanded for further proceedings before the board on Gobbi's subdivision application.

*So ordered.*

---

[21]Though the Land Court judge annulled the subdivision approval based on his conclusion that Gobbi was without the right of access on which the approval relied, his conclusion (with which we agree) that the board improperly reserved for future determination an issue of substance nonetheless requires that the approval be annulled.