PHILLIP POST & others[1] *vs.* THOMAS E. McHUGH & others.[2]

No. 08-P-1086.

Suffolk. April 7, 2009. - January 29, 2010.

Present: DUFFLY, BROWN, & McHUGH, JJ.

*Real Property,* Deed, Easement. *Estoppel. Subdivision Control,* Plan. *Way,* Private.

In proceedings in Land Court to establish rights to certain ways dividing the properties of the plaintiffs and the defendants, the record supported the judge's finding that a plan filed in 2006 accurately depicted the location and dimensions of the ways at issue [202]; further, the judge properly found that two defendants, as record owners of one parcel, held a perpetual easement by estoppel over the ways, and that a third defendant, as the record owner of another parcel, held a perpetual easement by estoppel over one way [202-204].

In proceedings in Land Court to establish rights to certain ways dividing the properties of the plaintiffs and the defendants, the judge properly found that the actions of two plaintiffs in placing boulders in one way only partially extinguished the defendants' easement rights over the way [204-205]; further, there was no merit to the plaintiffs' arguments that any easement rights created by the plan at issue were unenforceable due to a mortgage occurring prior to the plan's recording [205], or that the defendants were seeking to overburden the easement rights they possessed [205-206].

In proceedings in Land Court to establish rights to certain ways dividing the properties of the plaintiffs and the defendants, the judge properly concluded that the defendants' easement rights included a right to make reasonable repairs and improvements to those ways and to install utilities. [206-207]

CIVIL ACTION commenced in the Land Court Department on February 28, 1997.

Following initial rulings by *Leon J. Lombardi,* J., the case was heard by him on a statement of agreed facts.

*Thomas E. Beatrice* for the plaintiffs.

*Edmund A. Allcock* (*Philip J. Riley* with him) for the defendants.

---

[1]Linda Post, Daniel Payne, and Priscilla Payne.

[2]Mary Preytis, Richard T. Angelo, and Virginia A. Angelo.

McHUGH, J. Rights to a private way in Middleton are at issue in this litigation which began in 1997. That year, Philip and Linda Post (the Posts) and Daniel and Priscilla Payne (the Paynes) (collectively, plaintiffs) sued Thomas McHugh (Mc-Hugh) and Marybeth Preytis (Preytis) in the Land Court, seeking declaratory and injunctive relief regarding ownership of Iveson Street, a private way that divides their properties and leads to Mill Street, a public thoroughfare which the plaintiffs' properties abut. Richard and Virginia Angelo (the Angelos) intervened as defendants in 2006.[3] We refer hereinafter to McHugh, Preytis, and the Angelos collectively as the defendants.

The Posts' parcel, 64 Mill Street, sits at the south intersection of Mill and Iveson Streets. The Paynes' parcel, 66 Mill Street, sits at the north intersection of Iveson and Mill Streets and is directly across Iveson Street from the Posts' property. The Preytis parcel[4] is west, and on the same side of Iveson Street, as the Payne parcel. Finally, the land owned by the Angelos is west of, and on the same side of Iveson Street as, the Posts. A sketch of these parcels is attached as an Appendix to assist the reader.

After a trial held in August, 1999, a judge of the Land Court ruled, in a decision dated October 26, 2000 (2000 decision), that deficiencies in the record prevented him from rendering the declaratory relief the plaintiffs sought. However, he further ruled that the plaintiffs had partially extinguished through adverse use any easement rights the defendants might otherwise have had over Iveson Street. Specifically, the judge found that after the Posts bought their property in 1975, they built a retaining wall using large boulders that partially blocked the Mill Street entrance to Iveson Street, making the blocked part of Iveson Street unusable. By maintaining the wall in place for more than twenty years, the judge concluded, the Posts had extinguished whatever easements theretofore existed over the blocked part of the street.

There matters stood until 2006, when the Angelos, who had

---

[3] A series of procedural interactions preceded the Angelos' intervention, but those interactions add nothing to an understanding of the issues in the case and therefore play no role in our discussion.

[4] The complaint named McHugh as a buyer of the Preytis parcel. By 2007, he was not an active participant in the litigation, though he remains a party of record.

purchased their parcel in 2005, filed a plan dated August 25, 2006 (2006 plan), showing Iveson Street as a means of access to their property. The parties then collaborated on exhibits and ultimately presented the matter for trial as a "case stated."[5] Following thorough and comprehensive findings of fact and conclusions of law, the judge ordered entry of judgment in favor of the defendants. The judgment was predicated on three basic principles: (1) ownership of a lot abutting a private way extends to the center of the way, (2) such ownership includes a right to use the way, and (3) an easement to use a private way includes a right to improve it. The declaratory judgment stated that the record owners of the Preytis parcel hold a perpetual easement by estoppel over Iveson Street and that the record owners of the Angelo parcel hold a perpetual easement by estoppel over Iveson and Curve Streets. These easements include a right to improve the easement and install utilities, except to the extent the 2000 decision found that the Posts partially extinguished easement rights to Iveson Street.

On appeal, the plaintiffs claim the judge made various errors, and we explore the components of their claim seriatim in the discussion that follows. In the end, though, we find no error and affirm.

*Discussion.* First, the record supports the judge's finding that the 2006 plan accurately depicts the location and dimensions of Iveson Street and Curve Street.[6]

Second, the judge properly found that the record owners of the Angelo parcel hold a perpetual easement by estoppel over both Iveson and Curve Streets and that the record owner of the Preytis parcel holds a perpetual easement by estoppel over Iveson Street. "[W]hen a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny

---

[5] "Where a statement of agreed facts contains all the material facts on which the rights of the parties are to be determined in accordance with law, it constitutes a 'case stated.' . . . As such, '[t]he inferences drawn by the trial judge from the facts stated are not binding upon us, and questions of fact as well as questions of law are open for review upon these appeals.' " *Massachusetts Bay Transp. Authy.* v. *Somerville,* 451 Mass. 80, 84 (2008), quoting from *Caissie* v. *Cambridge,* 317 Mass. 346, 347 (1944).

[6] The October 17, 1927, plan and the 1964 Marino plan, discussed below, show Iveson and Curve Streets as ways forty feet in width.

the existence of such street or way." *Casella* v. *Sneierson*, 325 Mass. 85, 89 (1949). The easement over that way acquired by the grantee "embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed." *Ibid.*

The June 20, 1975, deed conveying 64 Mill Street to the Posts refers to Curve Street as the parcel's southwesterly boundary and Iveson Street as its northerly boundary. The deed also refers to a plan created and recorded in 1964 (Marino plan) that establishes the locations of the two ways and shows the layout of Iveson Street as forty feet wide. The deed and the plan it references gave the Posts ample notice of both ways.

As for the Payne parcel, their November 10, 1967, deed refers to a plan dated October 17, 1927, recorded on October 26, 1927, entitled "Plan of Part of 'Middleton Pines,' owned by F.H. Griswold, . . . October 17, 1927, Thomas A. Appleton, C.E." (October 17 plan). The plan shows Mill Street, one of the lot boundaries mentioned in the deed itself, but does not show Iveson Street or the location of what is now the Angelo parcel, although the relationship between the lot's southerly boundary and Iveson Street can be determined by comparing the October 17 plan with other plans that had not been recorded at the time of the conveyance to the Paynes.[7] Neither the Paynes' deed nor any other deed in their chain of title, save one,[8] makes any reference to Iveson Street. The Paynes, therefore, assert that they could not be charged with notice of the existence of Iveson Street at the time they purchased their property and are not burdened by whatever easement notice of Iveson Street would have imposed.

The Paynes' argument proves too much. Their deed describes the southerly boundary of their lot as the "land of owners unknown," not as Iveson Street.[9] But the Paynes only acquired a right to use any part of the land beyond that southerly boundary by virtue of the Derelict Fee Statute, G. L. c. 183, § 58, as

[7] The trial judge noted a total of four plans prepared by Thomas Appleton, including the October 17 plan.

[8] The exception is a deed dated August 4, 1928, from Frederick Griswold to Alice Barrett that referred to "Iveson Street as shown on" the October 17 plan. As noted, however, that plan does not mention Iveson Street or show its boundaries.

[9] Indeed, the principal component of the Paynes' argument is that nothing in their chain of title put them on notice of the existence of Iveson Street.

amended by St. 1973, c. 185, § 1, which provides in material part that:

"Every instrument passing title to real estate abutting a way, whether public or private . . . shall be construed to include any fee interest of the grantor in such way . . . ."[10]

The statute, however, only operates to allocate rights to ways if the way is "sufficiently designated." See *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 677-678 (1965). The Paynes' argument that they had no notice of Iveson Street's existence is, in essence, an argument that Iveson Street was not sufficiently designated on the October 17 plan, the only plan applicable to their purchase. But if Iveson Street was not "sufficiently designated," then the statute was inapplicable, the Paynes acquired no rights of any kind to any part of the land beyond their southerly boundary, and they have no right to restrict the use that those with rights to the land make of it.[11] To the extent that the statute does give the Paynes a fee interest in Iveson Street, notwithstanding questions regarding "sufficient designation," their fee interest is burdened by the easements that arose when the way was created, see, e.g., *Adams* v. *Planning Bd. of Westwood*, 64 Mass. App. Ct. 383, 389 (2005), easements which, as the judge correctly found, benefited the owners of the Preytis and Angelo parcels.

Third, the judge properly found that the Posts only partially extinguished easement rights over Iveson Street. To extinguish easement rights, a servient tenant's adverse acts must render use

---

[10]"The statute incorporates the basic common law principle of presumed intent with regard to conveyed land abutting an actual or contemplated way owned by the grantor . . . that the grantor intended to pass title to the center of the way." *Tattan* v. *Kurlan*, 32 Mass. App. Ct. 239, 243 (1992).

[11]The Paynes elected not to testify or offer evidence at the August, 1999, trial. After that trial, the judge determined, in the 2000 decision, that the Posts had partially extinguished the defendants' rights to use of a portion of Iveson Street. Before the second trial on the agreed record, the judge ruled that the Paynes no longer had a right to claim that they had somehow extinguished whatever easement rights other lot owners had with respect to Iveson Street. Specifically, the judge stated that "[t]he Paynes opted not to participate in the [1999] trial when the Posts testified concerning their acts leading to a finding of partial extinguishment [of the easement over Iveson Street]. Since the issuance of the 2000 decision, the goal has been to bring the instant action to completion by deciding matters of record title, not to relitigate claims that were or should have been tried in 1999."

of an easement "practically impossible for the [twenty-year] period required for prescription." *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.*, 276 Mass. 153, 159 (1931). As the boulders the Posts placed in the way when they regraded their property "render[ed] the use of only part of [the] right of way impossible, the easement [was] extinguished only as to that part." *Pappas* v. *Maxwell*, 337 Mass. 552, 557 (1958).

The fourth appellate issue concerns the 1933 foreclosure of the mortgage covering Middleton Pines that Frederick Griswold had given the trustee of the Essex Realty Trust to secure a loan. The plaintiffs cite *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100, 106 (1933), for the proposition that "[a]fter the giving of a mortgage deed the mortgagor cannot create any easement in the land conveyed and thus diminish the estate granted to the mortgagee." They contend that because Griswold mortgaged Middleton Pines before recording any of the Appleton plans, any easement rights the plans purport to create are unenforceable. We disagree.

*Holyoke Realty* deals with an easement by implication, a right "created when land under single ownership is severed and the easement is reasonably necessary for the enjoyment of one of the parcels." *Silverleib* v. *Hebshie*, 33 Mass. App. Ct. 911, 912-913 (1992). In contrast, the defendants hold easements by estoppel. Moreover, after the foreclosure, the trustee deeded the relevant Middleton Pines land to L. L. Broyderick. Each time Broyderick conveyed Middleton Pines lots to third parties, she described them "by referring to lot numbers shown on one of the various Appleton plan[s]." Thus, the Appleton plans continued to affect the rights of grantees after the foreclosure.

Penultimately, the plaintiffs maintain that lots forming a component of the defendants' property that do not bound on Iveson or Curve Streets are no part of the defendants' estates entitled to use the easement. Essentially, their claim in that regard is that the defendants are seeking to overburden whatever easement they may possess. See, e.g., *Swensen* v. *Marino*, 306 Mass. 582, 583 (1940). The trial judge, however, pointed out that in construing a deed, a court must "ascertain the intent of the parties from the language used in the light of the surrounding circumstances." *Brackett* v. *Pitcher*, 296 Mass. 295, 297 (1936). Looking to these

circumstances, he found that Griswold had the Appleton plans created when subdividing his land into the Middleton Pines lots, each of which fronted on some abutting public way or subdivision road. Thus, he found it "illogical to argue that Griswold intended anything other than that the owners of lots within Middleton Pines be able to use one or more of the subdivision roads to access those lots." Because Broyderick conveyed the lots after the foreclosure "in the same fashion as did Griswold relying on the Appleton plans" and recognizing the subdivision roads shown on the plans, the judge found that Broyderick recognized the same subdivision roads and likewise intended that the owners of all lots would have access to them.[12] We agree with the judge's reasoning and his result.

Finally, we agree that the defendants' easement rights to Iveson Street and Curve Street include a right to make reasonable repairs and improvements to those ways and to install utilities. "[W]hen an easement or other property right is created, every right necessary for its enjoyment is included by implication." *Guillet* v. *Livernois*, 297 Mass. 337, 340 (1937), quoting from *Sullivan* v. *Donohoe*, 287 Mass. 265, 267 (1934). See, e.g., *Glenn* v. *Poole*, 12 Mass. App. Ct. 292, 296 (1981) ("Clearing limbs from a roadway, smoothing the surface of a way, placing gravel on a road, or even paving a road have been condoned as reasonable repairs, if necessary to enjoyment of [an] easement"). Moreover, the expanded rights available pursuant to G. L. c. 187, § 5,[13] apply when rights in a way arise by implication or necessity based on the parties intent, see *Adams* v. *Planning Bd. of*

---

[12]In any event, the judge also found that the Angelo and Preytis parcels, although an amalgam of what originally had been a number of separate lots, each constituted "one indivisible residential lot." That finding disposed of the plaintiffs' contention that the defendants were attempting to overburden the easement because their predecessors in title had acquired the lots seriatim and thus sought to add after-acquired property to whatever easement they obtained when they purchased the first lots in what eventually became the current parcels.

[13]General Laws c. 187, § 5, as amended by St. 1988, c. 334, § 6, states that "owners of real estate abutting on a private way who have by deed existing rights of ingress and egress upon such way or other private ways shall have the right by implication to place, install or construct in, on, along, under and upon said private way . . . appurtenances necessary for the transmission of gas, electricity, telephone, water and sewer service, provided such facilities do not unreasonably obstruct said private way."

*Westwood*, 64 Mass. App. Ct. at 392, and we recently observed that there was "no reason why that rationale would not apply to an easement by estoppel." *Lane* v. *Zoning Bd. of Appeals of Falmouth*, 65 Mass. App. Ct. 434, 439 (2006).

*Judgment affirmed.*[14]

---

[14]Although we affirm, the plaintiffs' claims were not wholly insubstantial or frivolous. We therefore deny the defendants' requests for attorney's fees and costs.