JOHN J. DENNIS & another[1] *vs.* PLANNING BOARD OF
WINCHESTER & another.[2]

No. 06-P-1908.

Middlesex. November 8, 2007. - February 6, 2008.

Present: CYPHER, VUONO, & GRAINGER, JJ.

*Subdivision Control,* Decision of planning board, Approval of plan.

In a civil action to overturn the rescission by the defendant town planning
board (board) of its constructive approval of a subdivision plan (plan) for
certain land purchased by the plaintiffs and then mortgaged to a bank, with
a second mortgage granted to the plaintiffs' predecessors in title, the
Superior Court judge properly granted summary judgment in favor of the
board, which complied with G. L. c. 41, § 81W, in voting to rescind the
plan without seeking the consent of the plaintiffs or their mortgagees,
where the plan was never finally approved, given the lack of any recorded
certificate of constructive approval or subdivision plan in the registry of
deeds; where neither the conveyances under the deed nor the mortgages in
any way relied on the subdivision plan; and where the second mortgagees
were not entitled to protection under § 81W as good faith purchasers, in
light of their awareness of the board's intent to disapprove the plan.
[181-184]

CIVIL ACTION commenced in the Superior Court Department on
May 25, 2004.

After review by this court, 66 Mass. App. Ct. 1106 (2006),
the case was heard by *Hiller B. Zobel,* J., on a motion for sum-
mary judgment.

*Thomas J. Freda* for the plaintiff.

*Melissa C. Donohoe (Wade M. Welch* with her) for the
defendants.

CYPHER, J. The plaintiffs appeal from a Superior Court judg-
ment affirming rescission of the constructive approval of a

---

[1] Margaret M. Dennis.

[2] Town of Winchester.

subdivision plan by the planning board (board) of the town of Winchester (town). We affirm.

*Background.* The plaintiffs are the successor owners of land that was proposed for subdivision in 1999 by Michael F. Greene and Janet Burke (original owners). The board filed a certificate disapproving the definitive plan with the town's clerk on August 10, 2001, two days after the expiration of the ninety-day review period in G. L. c. 41, § 81U, fifth par. The original owners timely filed a complaint in the Superior Court appealing that decision and seeking constructive approval. On April 1, 2002, the original owners sold the land to the plaintiffs, who mortgaged the land to the Winchester Savings Bank (bank), and granted the original owners a second mortgage.

The plaintiffs were substituted in the Superior Court action on July 16, 2002. That action was decided on summary judgment in February, 2004, when a judge ruled that the subdivision plan had been constructively approved, but remanded the case to allow the board an opportunity to consider rescission under G. L. c. 41, § 81W.

Following a vote of the board to rescind the approval, which vote took place on April 29, 2004, the plaintiffs filed a second complaint in the Superior Court, seeking to annul the rescission.[3] A second judge held that, in fact, the subdivision plan had not been constructively approved. He therefore denied the motion to annul and ordered the complaint dismissed.

Separate appeals to this court followed each of these decisions.[4] In an unpublished memorandum and order dated May 10, 2006, and issued pursuant to our rule 1:28, we affirmed the first judge's decision that the plan had been constructively approved and remanded so much of the second decision that pertained to the board's subsequent rescission, for a determination whether the rescission was proper.

On remand, a third judge affirmed the board's rescission. The plaintiffs now appeal that summary judgment, arguing that (1) the board failed to obtain their consent as well as the consent of their mortgagees before rescinding approval; (2) they pur-

---

[3]The two Superior Court actions were consolidated on August 17, 2004.

[4]The appeals were consolidated in this court on March 3, 2006.

chased the land in good faith and for valuable consideration; (3) the deed to the land conveyed all the lots in the subdivision to them; and (4) the board's concerns over access to, and flooding of, the subdivision did not negate the statutory requirement that they consent to the rescission.

*Discussion.* Our review is confined to the summary judgment materials before the judge challenging the board's rescission. Our analysis proceeds under the familiar principles of *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-554 (1976).

The board, following the procedure in G. L. c. 41, § 81W, voted to rescind the constructive approval on April 29, 2001, without obtaining the consent of the plaintiffs or their mortgagees.[5] The central issue in this case is whether their consent was required. Under G. L. c. 41, § 81W, second par., as appearing in St. 1977, c. 473, consent was required if the rescission "affect[ed] the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration . . . ." Alternatively, the statute, *ibid.,* does not prohibit rescission "when there has been a sale to a single grantee of . . . the entire parcel of land shown on the subdivision plan . . . ."[6] We first must determine the status of the subdivision plan at the time of the challenged rescission, in order to determine the effect of that action on the plaintiffs.

When the plaintiffs purchased the land from the original

---

[5]There is no dispute that the subdivision plan under review by the board was constructively approved at the expiration of the statutory ninety-day time limit, on August 8, 2001. The board failed to file a written decision disapproving the plan until August 10, 2001. See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow,* 355 Mass. 165, 168-169 (1969), and cases cited.

[6]General Laws c. 41, § 81W, second par., as appearing in St. 1977, c. 473, states in full:

> "No modification, amendment or rescission of the approval of a plan of a subdivision or changes in such plan shall affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan, or any rights appurtenant thereto, without the consent of the owner of such lots, and of the holder of the mortgage or mortgages, if any, thereon; provided, however, that nothing herein shall be deemed to prohibit such modification, amendment or rescission when there has been a sale to a single grantee of either the entire parcel of land shown on the subdivision plan or of all the lots not previously released by the planning board."

owners and mortgaged it on April 1, 2002, neither the recorded deed nor the mortgage documents contained any reference to the subdivision plan that had been under review by the board. The deed only describes the land and the buildings as represented on a 1977 "plan of land," which is otherwise not identified.

As to the status of the plan after the expiration of the statutory review period on August 8, 2001, the original owners were entitled to request a certificate of constructive approval from the town's clerk, but did not. Instead, they filed a complaint in the Superior Court, principally seeking a judgment that the plan had been constructively approved, and that the late-filed certificate of disapproval be annulled.[7] After their substitution for the original owners, the plaintiffs awaited the outcome of that action, which resulted in the first Superior Court decision in February, 2004.[8] In the second action, when the plaintiffs sought to annul the rescission, the plaintiffs stated as an undisputed fact that they requested a constructive approval certificate on March 12, 2004. If such a certificate was issued, no copy of it is in the record, nor is there any indication that it was recorded in the registry of deeds.

Constructive approval is not "self-actuating," *Krafchuk* v. *Planning Bd. of Ipswich*, 70 Mass. App. Ct. 484, 489 (2007). Our cases "dealing with constructive approval feature a land owner who relies upon and defends a constructive approval." *Windsor* v. *Planning Bd. of Wayland*, 26 Mass. App. Ct. 650, 654 (1988). Here, at the time the board acted to rescind the constructive approval, the certificate of constructive approval had not been issued or recorded in the registry of deeds. More significantly, there is no indication that the subdivision plan had been recorded. The recording of a certificate of constructive approval and the subdivision plan are requisites for securing final approval. See G. L. c. 41, § 81V. Cf. *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 714 (1971).

---

[7]The plaintiffs also asked for an adjudication of the merits of the plan, and for eminent domain damages.

[8]Apparently by way of explanation for the delay in seeking a certificate of constructive approval, the plaintiffs rely on G. L. c. 41, § 81V, inserted by St. 1953, c. 674, § 7, to state that because a complaint was filed in the Superior Court, no certificate could be issued until "after receipt of certified records of the superior court . . . indicating that such approval has become final."

In any event, because the recorded deed and the mortgages did not refer to the subdivision plan, it cannot be said that the conveyances under the deed or the mortgages relied on the subdivision plan in any way. Because the mortgage with the bank was based on the land without reference to the subdivision plan, and without reliance on it, rescission of the constructive approval of the subdivision plan would not in any way disturb the bank's position. Contrast *Murphy* v. *Planning Bd. of Norwell,* 5 Mass. App. Ct. 393, 396 (1977) ("It seems to us that land approved for a subdivision would have a value greater than that which it would have without such approval"); *Terrill* v. *Planning Bd. of Upton, ante* 171, 175 n.9 (2008) (where board purported to "rescind" plan altogether, effect on "bank's rights could be seen as drastic").

Moreover, there are no facts to support an inference that the bank even was aware of the plaintiffs' pending claim of constructive approval in the Superior Court. Compare the discussion in *Terrill* v. *Planning Bd. of Upton, supra* at 176-177. By comparison, the second mortgage the plaintiffs granted to the original owners not only was not secured by the subdivision, but both parties knew of the board's intent to disapprove the plan, and therefore assumed the risk that the board would seek rescission.

Because rescission is a "well-worn" way for a board to extricate itself from its failure timely to file a decision with the town's clerk to prevent constructive approval, *Windsor* v. *Planning Bd. of Wayland, supra* at 656, the board's rescission here was nearly certain to follow. In these circumstances, we think the second mortgage transaction with the original owners does not entitle these mortgagees to the protection as good faith purchasers[9] afforded by § 81W. Accordingly, their consent to the rescission was not required, and the board did not err in rescinding approval of the subdivision plan without their consent.[10,11]

---

[9] A bona fide or good faith purchaser has been defined as "one who has in good faith paid valuable consideration for property without notice of prior adverse claims." Black's Law Dictionary 1271 (8th ed. 2004).

[10] We think it also plain that the original owners, as second mortgagees, having entered into the mortgage transaction based only on the unsubdivided land, will be unaffected by rescission.

[11] Alternatively, we consider whether rescission would not be prohibited if

We do not address the plaintiffs' final issue, a one-sentence assertion that the reasons given by the board for rescission did not relieve the board from following the procedure of § 81W. "Presumably a planning board may not without good reason rescind approval of a definitive plan." *Young* v. *Planning Bd. of Chilmark*, 402 Mass. 841, 846 (1988). Here, the board stated its reasons, and the plaintiffs do not dispute the merits of those reasons.[12]

We have determined that no facts have been presented indicating that the board failed to comply either with the procedures or the substantive requirements of G. L. c. 41, § 81W, and we conclude that the board properly acted in rescinding the constructive approval of the subdivision plan.

*Judgment affirmed.*

---

the plaintiffs acquired the land as a "single grantee" of the entire parcel of a subdivision. See G. L. c. 41, § 81W, as appearing in St. 1977, c. 473. In an attempt to avoid that result, the plaintiffs assert that they acquired the land as tenants by the entirety, arguing at some length that they should be considered two grantees, and not a single grantee. Their argument is a tortured attempt to show that "both were grantees to the deed and can both independently act with regard to that property." That argument is without merit. There is no indication that the plaintiffs acted other than as an undivided and single grantee in this case. See generally *Coraccio* v. *Lowell Five Cents Sav. Bank*, 415 Mass. 145, 151 (1993) (after alteration of G. L. c. 209, § 1, by St. 1979, c. 727, "a tenancy by the entirety remains a unitary title . . . and the estate remains inseverable . . . . One spouse, acting alone, cannot convey or encumber the *entire* estate").

[12]During review of the definitive plan, it was discovered that it was based on an incorrect flood plain datum, and no new definitive plan correcting that error was submitted. The board states that the plan also failed to provide safe and convenient access for travel and for securing safety in case of flood or other emergencies.