JUDITH A. CZYOSKI & others[1] *vs.* PLANNING BOARD OF TRURO.

No. 09-P-1156.

Suffolk. March 18, 2010. - June 29, 2010.

Present: McHUGH, MILKEY, & HANLON, JJ.

*Subdivision Control,* Decision of planning board, Approval of plan, Streets.

A Land Court judge properly vacated a local planning board's decision to rescind its constructive approval of a definitive subdivision plan for a residential development, where the board failed to justify the rescission based on any substantive concerns about the proposed development, and where the board's desire to undo its procedural error resulting in the constructive approval was not by itself sufficient to justify the board's action. [156-161]

CIVIL ACTION commenced in the Land Court Department on July 9, 2007.

The case was heard by *Charles W. Trombly*, J., on motions for summary judgment.

*E. James Veara* for the defendant.

*Thomas O. Moriarty & Bruce P. Gilmore* (*Robert Nislick* with them) for the plaintiffs.

MILKEY, J. By failing to adhere to statutorily prescribed procedures, the planning board of the town of Truro (the board) constructively approved a definitive subdivision plan for a residential development. The board then sought to undo its error by rescinding the approval. On cross motions for summary judgment, a Land Court judge ruled that the board failed to justify the rescission based on any substantive concerns about the proposed development. He also concluded that the board's desire to undo its procedural error and start the process over was not by itself sufficient to justify the board's action. We

---

[1] Andrew Czyoski, as trustee of A & B Realty Trust, and Nickerson Realty Corporation, intervener.

affirm the judgment vacating the board's rescission of the constructive approval.

*Background.* Plaintiffs Judith Czyoski and Andrew Czyoski, as trustees of A & B Realty Trust (collectively, the owners), are property owners in Truro who want to develop their land into a fifteen-lot subdivision. Under the owners' plans, sole access for each of the subdivided lots would be provided through an extension of an existing private way known as Sawyer Grove Road (the road). The owners have permission from the current owner of the road to use it and to extend it on to their property.[2] The board approved the construction of the existing portion of the road in 1989 when it approved plans for a seventeen-lot subdivision on land adjacent to the owners' property. The 1989 approval was limited to the subdivision plan then before the board, and the parties here agree that any expanded use of the road required additional approval. As developed further, *infra,* the parties disagree on whether the 1989 approval affirmatively intended to prohibit further expansion of the road or instead intended to table that issue for future consideration.[3]

The owners filed a definitive subdivision plan on June 13, 2005, and revised it later that month. To bolster their application, the owners commissioned a sixty-two-page traffic study, which assessed conditions in the area in July of 2005. That study concluded that construction of the new development would not raise any significant traffic concerns.[4] Transportation staff at the Cape Cod Commission reviewed that study and sent a letter

---

[2]Nickerson Realty Corporation, the current owner of the road, was allowed to intervene as a plaintiff, and it joined with the owners in submitting a brief to this court.

[3]When the board voted in 1989, it required as a condition of its approval that the developers "[c]ovenant that roads are insufficient and inadequate to serve development of any adjacent property, which will require additional and separate access, and roads on plan are approved only for this sub-division." Nevertheless, the covenants that the developer of that land actually recorded — and that the board apparently approved on February 7, 1990 — did not include the reference to the road as being "insufficient and inadequate" for expanded use. Instead, the related covenant read, "Approval of this definitive plan is limited to construction of Sawyer Grove Road as shown on said plan to provide access for the 17 lots shown on the plan and is not approval for construction of any ways to adjoining land."

[4]The study concluded that "[t]he proposed development is expected to generate 11 vehicle trips during the AM peak hour (3 trips in and 8 trips out)

to the board endorsing the methodology that the study used, as well as its over-all conclusions. The local police chief and the local fire chief also separately wrote to the board to express their views that the planned development did not raise traffic safety or vehicle access concerns.

After various continuances in the proceedings, the board unanimously voted on February 21, 2006, to deny approval of the plan. It stated two reasons for doing so: (1) "[c]oncern for safety of [vehicles] and pedestrians on Sawyers Grove, [Hughes] & Priest Roads"; and (2) "[l]ack of significant protection of Pilgrim Pond as spelled out in the LCP (Local Comprehensive Plan)." Although the denial did not specify the nature of the board's concerns about Pilgrim Pond, subsequent proceedings reveal that those concerns did not relate to water quality issues, but instead related to the potential of the proposed development to mar existing views from the pond.

The owners appealed the denial to the Superior Court. In that action, they argued that the board already had constructively approved the plan by failing to act on it, in the manner prescribed by G. L. c. 41, § 81U, fifth par., within the requisite ninety-day period. A Superior Court judge agreed and granted summary judgment in favor of the owners. Although the board filed a notice of appeal in Superior Court, the parties filed a stipulation of dismissal of that appeal on or about May 31, 2007. Therefore, whether the plan was constructively approved is no longer at issue.[5]

---

and 15 vehicle trips during the PM peak hour (10 trips in and 5 trips out)." It documented that each of the intersections in the study area had an adequate "sight distance," as well as the absence of any reported accidents there in the prior "most recent three years of data available." The study projected no change in the "level of service" that each of the local roads provided in the vicinity of the project, and it projected that the largest average amount of delay time that the project would add at the studied intersections was one-tenth of one second.

[5]It is not clear on the current record whether the owners sent a copy of the stipulation of dismissal to the town clerk. Therefore, it is also not clear when, or if, the constructive approval, strictly speaking, became "final." See *Krafchuk* v. *Planning Bd. of Ipswich*, 453 Mass. 517, 525-526 (2009) (where appeal of constructive approval has been taken, the approval becomes final "when the town clerk receives a certified record of the court indicating that the constructive approval has become final"), citing *Kitras* v. *Zoning Administrator of Aquinnah*, 453 Mass. 245, 253 (2009). Our decision does not

Even before the board executed its stipulation of dismissal, it decided, apparently on its own initiative, to consider whether to rescind the constructive approval. It held an initial hearing on that issue on May 22, 2007. Cognizant that the board previously had expressed concerns over traffic, and aware that the membership of the board had significantly changed in the intervening year, the owners sought to be heard on the traffic issues at the hearing. Specifically, the owners offered two witnesses: their traffic expert, who was prepared to present the 2005 study, and the local director of public works, who, according to the owners, was prepared to add his voice to those of the other local officials who believed that the development would not appreciably affect traffic.[6] One board member moved to hear such testimony, but the motion was ultimately defeated by a tie vote. After much discussion about the board's options, the board decided to continue the hearing to a later date.[7] At the close of the hearing, the board's acting chair stated his view that continuing the hearing would allow the board to take evidence on the traffic safety issues from the owners and from interested members of the public.

On June 12, 2007, board members took a view, and later that day, the board resumed its hearing. The owners again brought their traffic expert to testify, but again the board declined to hear from him.[8] In fact, there was virtually no discussion of the merits of any traffic issues. One board member alluded to her recollection that there once had been a traffic accident in the vicinity of Sawyer Grove Road (although the owners contested whether the referenced accident was even in that area).

There was substantial discussion at the June 12 hearing about

turn on the date that the constructive approval became final, and the board has in any event waived any argument that its constructive approval was not final.

[6]The owners also submitted updated letters of support from the local police chief and the local fire chief, and they also resubmitted the Cape Cod Commission letter.

[7]This was at the suggestion of the owners, who also expressed their willingness to discuss the possibility of a modification of their plan as an alternative to rescission.

[8]One board member expressed her view "that it's inappropriate to be listening to essentially one side of a presentation, meaning a traffic expert being presented by an applicant." Without further explication, she stated her view that "perhaps" members of the public would not be able to respond, "because this isn't a subdivision hearing."

whether the 1989 approval of Sawyer Grove Road intended to bar further expansion of that road and, if so, whether that would render the road "unavailable" to serve as access to the new development. That issue was the subject of a legal opinion that town counsel had submitted to the board prior to the hearing. He opined that the board intended, through its 1989 vote, to prohibit further expansion of the road, not merely to table that question for future review. However, he further opined that this did not bar the current board from revisiting the issue.

Also at the June 12 hearing, one board member moved to rescind the constructive approval, stating that rescission would allow the board to "just start back at the beginning." Town counsel explained that the owners still could resubmit a subdivision plan and that the substantive issues could be fully aired in the ordinary course of review of that plan. The acting chair of the board expressed his view that the proposed development raised substantive issues that "need to be reviewed and testimony taken in an atmosphere which is absolutely neutral" and that the board had "an obligation to the town to go back to square one." He then called the motion for rescission, which passed by a unanimous vote. In its written decision, the board cited the following four grounds for its action:

"1. The unavailability of Sawyer Grove Road as access;

"2. The inherent safety problems, as disclosed in the record of the [2006] hearings previously held on the [2005] plan;

"3. The failure to adequately protect some of the views of the [owners'] property from Pilgrim Pond, as recommended generally in the Truro Comprehensive Plan[; and]

"4. The fact that the Planning Board never intended to approve the plan, and was led to believe by the applicant's counsel that delay in acting on the plan was acceptable to the applicant."[9]

---

[9]The board added that "the record should be clear that each of the grounds stated in the motion is separate and distinct, and considered sufficient basis for rescission in and of itself as well as cumulatively."

The owners appealed from the board's decision to the Land Court pursuant to G. L. c. 41, § 81BB, and the parties cross-moved for summary judgment. To support their claims that no traffic or other concerns existed, the owners submitted in support of their motion four affidavits, including one from its traffic expert. In defense of its rescission decision, the board principally relied on a counterintuitive procedural argument that it since has abandoned.[10] Regarding the merits, even though the board concurred that the case appropriately could be resolved on summary judgment, the board did not counter the owners' affidavits nor otherwise seek to document any substantive concerns about the impact of the proposed development. The Land Court judge granted summary judgment in favor of the owners after concluding that none of the grounds provided by the board supported its decision to rescind the constructive approval.

*Discussion.* The subdivision control law establishes "an orderly procedure for definitive action within stated times." *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964). It sets forth strict rules that planning boards must follow lest their inaction result in subdivision plans being constructively approved. These rules are somewhat unforgiving to unwary board members. For example, to avoid constructive approval of a definitive subdivision plan, a planning board must file with the city or town clerk a certificate of the action that it has taken on that plan within ninety days after the plan has been filed, or by an extended date requested by the applicant. G. L. c. 41, § 81U, fourth and fifth pars. The fact that an applicant is willing to extend the ninety-day period is not by itself sufficient to prevent a constructive approval; rather, the board

[10]In the Superior Court action, the owners argued both that their plan had been constructively approved and that the board's decision denying approval of that plan failed on the merits. The Superior Court judge did not reach the merits of the board's denial, instead concluding that the plan had been constructively approved. In the subsequent Land Court action, the board argued that the owners somehow were precluded from challenging the merits of the board's decision in light of the fact that the owners previously had challenged the merits of the board's denial (even though the owners had prevailed in the earlier case, albeit without the merits having been reached). Alternatively, the board argued in the Land Court that the merits of its denial somehow still were open in the Superior Court case (even though the denial had been vacated and judgment had entered). The Land Court judge rejected these arguments, and the board does not press them on appeal.

must file notice of the extension with the clerk before the period has expired. *Krafchuk* v. *Planning Bd. of Ipswich*, 453 Mass. 517, 525-527 (2009).

A separate provision of the subdivision control law allows planning boards to "modify, amend or rescind" their approvals. G. L. c. 41, § 81W, inserted by St. 1953, c. 674, § 7. Courts long have recognized that planning boards may apply this provision to constructive approvals. See *Selectmen of Pembroke* v. *R. & P. Realty Corp., supra* at 128; *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 170 (1969). A board's ability to rescind constructive approvals provides a safety valve that helps protect against legitimate police power concerns being dissipated by sloppy practice. However, a planning board may not rescind its approval of a definitive plan (constructive or otherwise) unless there is "good reason" to do so. *Young* v. *Planning Bd. of Chilmark*, 402 Mass. 841, 846 (1988), citing *Baker* v. *Planning Bd. of Framingham*, 353 Mass. 141, 144-145 (1967). In assessing the propriety of planning board action, we confine our review to the reasons offered by the board, albeit on the de novo record developed in the trial court. *Lakeside Builders, Inc.* v. *Planning Bd. of Franklin*, 56 Mass. App. Ct. 842, 849-850 (2002). We turn then to examine the four grounds on which the board relied.[11]

The first three of the board's reasons involved substantive concerns related to the development's impact on traffic and views. We need not pause long on such concerns given the state of the record before us. Once the owners moved for summary judgment and submitted affidavits regarding the traffic and view issues, the board needed to counter such affidavits in order to dispute the owners' portrayal of the facts. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991) ("A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial"), citing *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). Because

---

[11]For all that appears on the record, the board's rescission decision may have issued prior to the constructive approval becoming final (see note 5, *supra*), and it is arguably procedurally defective for that reason. See *Bernstein* v. *Planning Bd. of Stockbridge*, 76 Mass. App. Ct. 759, 766-767, 771 (2010). Especially in light of the lack of clarity in the record and the fact that neither party has raised this issue, we decline to rest on these grounds.

the board declined to engage this burden, the judge's conclusion that the board failed to substantiate its stated concerns over traffic and views is unassailable.[12]

The board argues that the judge improperly conflated reason number one (the unavailability of the road) and reason number two (traffic concerns). As noted, *supra*, the board argues that when the 1989 board voted to approve the subdivision on the adjoining land, it included a condition that the developers of that land covenant that Sawyer Grove Road was "insufficient and inadequate to serve development of any adjacent property." According to the board, this means that its 1989 approval of the other subdivision has an added procedural bite, standing as a bar to further expansion of the road unless and until the board reopened the issue. The owners counter that the specific phrasing approved by the board in 1989 is beside the point, because the board approved the modified language in 1990, see note 3, *supra*. They also argue that the specific language on which the board relies is unenforceable, because it was not included in the covenants that actually were recorded.[13] See *M. DeMatteo Constr. Co.* v. *Board of Appeals of Hingham*, 3 Mass. App. Ct. 446, 459 (1975) (town board may not rely on condition of approval where that condition "was neither endorsed on the plan nor set forth in a separate instrument referred to in the plan").

We need not resolve this debate. The board concedes that when the owners requested approval to extend the road, the board was free to revisit the issue. By constructively approving the owners' plans, the board did just that. To the extent that the board retained concerns about the capacity of the road to handle additional traffic, it remained free to substantiate those concerns and to put them back on the table when it took up the question of rescission. The board made no effort to do so. Ultimately, the "unavailability" issue adds nothing to the referenced concerns about traffic, and the judge below properly treated them together.

---

[12]We need not reach the owners' separate argument that, even had the board established that the proposed development would affect the vista from Pilgrim Pond, the board could not rest its decision on that basis.

[13]The more restrictive wording was quoted in a 2007 letter from town counsel which referenced the 1989 vote. The owners argue that the board's argument is based on "hearsay" but omit the fact that this language also was included in one of the affidavits that the owners themselves submitted.

The only possible ground for rescission that remains is the last one: that the constructive approval was unintended, and that the board "was led to believe by the applicant's counsel that delay in acting on the plan was acceptable to the applicant." As an initial matter, we address the factual basis of such a claim, which neither party developed well on summary judgment. At one of the rescission hearings, counsel for the owners acknowledged that he had informed the board that his clients had agreed in writing to extend the ninety-day period. As the board long has conceded, it failed to file a notice of that agreed-to extension with the town clerk before the ninety-day clock expired. The fact that the owners understandably were content to take advantage of that procedural blunder does not establish that they, or their counsel, acted in bad faith to mislead the board. However, for purposes of our review, we assume that the board could have established at trial that the representations made by owners' counsel played some part in lulling it into ignoring its plain statutory deadlines.

In the end, however, that assumption does little to aid the board's cause. Although the board had well-recognized authority to undo its procedural blunder, that alone does not supply "good reason" to exercise that authority and to compel the owners to begin the process again. See *Young* v. *Planning Bd. of Chilmark*, 402 Mass. at 846. In rescinding its constructive approval, the board denied the owners' application, and that denial has to be defended on its own merits. Because the board has been unable to provide a defensible substantive reason for denying the application, its rescission decision cannot stand. See *id.* at 843-844 (rescission is inappropriate where "subdivision plan met all requirements of law and the rules and regulations of the planning board when it was approved").

None of the cases relied upon by the board supports its argument that a planning board may rescind a constructive approval without an underlying substantive basis for doing so. In *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, the planning board had intended to disapprove a subdivision plan because the developer's plans for disposing of sewage were inadequate, but nevertheless "blunder[ed] its way into a position where the plan became constructively approved." 355 Mass. at 169-170, quoting from *Pinecrest, Inc.* v. *Planning Bd. of Billerica*, 350 Mass. 336, 339

(1966). Although the court recognized that the board potentially could undo its error by rescinding the constructive approval, nothing in the opinion suggests that the board could do so without having to defend its rescission decision on the merits.[14] In *Dennis* v. *Planning Bd. of Winchester*, 71 Mass. App. Ct. 179, 184 & n.12 (2008), we upheld a board's decision to rescind a constructive approval. However, there, unlike here, the plaintiff owners did not challenge the substantive grounds on which the planning board had relied.[15]

We are not unsympathetic to the board's desire to employ a two-step rescission process: a first step for the board to undo its own procedural error, and a second step for the board to address the merits of a subdivision plan in more deliberate fashion. But such an approach is at odds with the statutory framework enacted by the Legislature. Under that scheme, a planning board generally has only ninety days to approve or deny a definitive subdivision plan, and it may extend the ninety-day clock only if it obtains and files with the clerk the applicant's agreement to an extension. In this manner, the statute serves to move the application process forward in an orderly and expeditious fashion. With that backdrop in mind, we cannot imagine that the Legislature intended that a planning board's own failure to abide by mandated procedures, without more, somehow provides a basis to reset the ninety-day clock and to start the process at square one.[16]

We do not mean to suggest that a planning board has authority to rescind a constructive approval only when it has already developed an airtight case for denying an application. Our point is simply that when a planning board rescinds a subdivision approval (constructive or otherwise) and disposes of the applica-

[14]The same is true of *Windsor* v. *Planning Bd. of Wayland*, 26 Mass. App. Ct. 650, 655-656 (1988) (remanding case where judgment had upheld constructive approval of subdivision plan so planning board could consider taking action pursuant to G. L. c. 41, § 81W, where board plainly had intended to approve plan only with certain conditions).

[15]The plaintiffs in *Dennis* apparently did not contest that the subdivision plan that had been constructively approved relied upon incorrect flood plain information. See *Dennis* v. *Planning Bd. of Winchester, supra* at 184 n.12.

[16]Nor do we think it plausible that the Legislature intended it to be easier for a planning board to deny a definitive subdivision plan by rescinding a constructive approval than to deny approval in the first place.

.

tion in a particular manner, that disposition needs to be defended on its own merits.

In the case before us, the board has not made any showing that it was hampered from completing its review of the owners' plan. Even if the owners were partly responsible for causing delays in the board's review of the definitive subdivision plan, this would not provide "good reason" for rescission in 2007. At that stage, the owners were ready, willing, and able to engage in a reasoned examination of any concerns that their proposed development might raise. The board rebuffed those entreaties and instead embraced casually expressed preferences to "just start back at the beginning."[17]

In sum, the board has not supplied any valid basis for its decision to rescind the constructive approval, and the Land Court judge therefore correctly vacated that action.

*Judgment affirmed.*

---

[17]On the record before us, the board has not even established that there were ever any concerns about the project that merited extended analysis or discussion. For example, the only evidence that was offered to substantiate the board's expressed traffic concerns is a passing reference to a single traffic accident that occurred at some unspecified time in the past, at a location that may or may not have been in the vicinity of the project.