Costanza & Bertolino, Inc. *vs*. Planning Board of North Reading.

Middlesex.    September 16, 1971. — December 30, 1971.

Present: Tauro, C.J., Cutter, Reardon, Quirico, & Hennessey, JJ.

*Subdivision Control.*

A town planning board, in conditionally approving a subdivision plan, was authorized under G. L. c. 41, § 81U, to impose a provision for automatic recission of the approval upon the applicant's failure to construct ways and install municipal services within a time specified in a covenant for their construction made by him under § 81U (2). |680–681|

Where approval of a subdivision plan by a town planning board was automatically rescinded because of the applicant's failure to fulfill his obligations under a covenant to construct ways and install municipal services, a successor in title to a tract consisting of some of the lots shown on that plan was not entitled to have the board indorse "approval under the subdivision law not required" pursuant to G. L. c. 41, § 81P, on a later plan of such tract submitted to the board by the successor where such tract constituted a "subdivision" because, after the rescission of the approval of the earlier plan, the lots on the successors' plan lacked "frontage on . . . a way shown on a plan theretofore approved" within (b) of G. L. c. 41, § 81L, as amended through St. 1965, c. 61, and were not within (a) or (c) of § 81L. |678-681|

Bill in equity filed in the Superior Court on April 25, 1969.

The suit was heard by *Tomasello*, J.

*Walter G. Bilowz*, Town Counsel, for the defendant.

*Eugene L. Tougas*, for the plaintiff, submitted a brief.

Hennessey, J.   This is an appeal brought under the provisions of the Subdivision Control Law, G. L. c. 41, §§ 81K to 81GG.   Pursuant to the provisions of G. L. c. 41, § 81P, the plaintiff, on April 3, 1969, submitted to the defendant a plan (hereinafter referred to as the Costanza plan) and requested that it be indorsed, "Approval Under the Sub-

division Control Law is Not Required." On that day, the planning board by a vote of its members declined to make the indorsement. The plaintiff appealed the action of the board to the Superior Court under G. L. c. 41, § 81BB. After a trial and a report of material facts, a final decree was entered declaring the vote of April 3, 1969, null and void, ordering the board to expunge the vote from its records and further ordering the board to indorse the plan as requested by the plaintiff. The defendant appeals from this final decree.

1. The sole issue before us is whether the planning board exceeded its authority in declining to make the requested indorsement. The judge found that the indorsement was refused because the plan constituted a subdivision. Section 81P of c. 41, as amended through St. 1963, c. 363, § 1, provides, in relevant part, that "if the board finds that the plan does not require such approval, it shall . . . endorse thereon . . . 'approval under the subdivision control law not required' . . . . *Such endorsement shall not be withheld unless such plan shows a subdivision*" (emphasis supplied). It is clear from the statute that, if the Costanza plan does, in fact, constitute a subdivision, the action of the planning board was correct and the decree must be reversed.

"Subdivision" as that term is used throughout the Subdivision Control Law is defined in G. L. c. 41, § 81L, as amended through St. 1965, c. 61, and means "the division of a tract of land into two or more lots and shall include resubdivision . . . ." The section further states that "the division of a tract of land into two or more lots shall not be deemed . . . a subdivision . . . if . . . every lot within the tract so divided has frontage on . . . (b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law." [1] The judge found that

---

[1] The other two exceptions contained in G. L. c. 41, § 81L, viz. every lot having frontage on (1) a public way or (2) a way in existence when the Subdivision Control Law became effective in the city or town in which the land lies, are not applicable in this case.

the Costanza plan consisted of a portion of lots shown on a definitive plan approved and indorsed by the planning board in 1960. The lots shown on such portion of this earlier plan (hereinafter referred to as the Lucci plan) and the lots shown on the Costanza plan were found to be identical. Robin Road, a proposed private way, is exhibited on both plans. The plaintiff argues that this prior approval brings it within the terms of clause (b) in G. L. c. 41, § 81L.

On September 8, 1960, Italo Lucci submitted a definitive plan to the planning board showing eighty-four lots. After a hearing on the plan, the board voted its approval thereon on November 3, 1960. The members of the board signed the plan on February 16, 1961, and it was recorded in Middlesex South registry of deeds on March 24, 1961. The plan was indorsed with the words, "Conditionally approved in accordance with G. L. Chap. 41 — Sec. 81U, as shown in agreement, recorded herewith." The agreement referred to was a covenant executed January 9, 1961, by Lucci. The covenant provided, among other things, that "The construction of all ways and the installation of all municipal services shall be completed in accordance with the applicable rules and regulations of the Board within a period of two (2) years from date. Failure to so complete shall automatically rescind approval of the plan." On March 15, 1962, a second covenant was executed by Lucci containing provisions identical with those in the earlier covenant. On the basis of this second covenant the date for completion of the ways and installation of the services was extended to March 15, 1964. Just one week after executing this second covenant, Lucci sold to the plaintiff the lots appearing on the Costanza plan.

The Subdivision Control Law is a comprehensive statutory scheme designed for the safety, convenience and welfare of the inhabitants of the cities and towns. *Gordon* v. *Robinson Homes, Inc.* 342 Mass. 529, 531. It accomplishes this purpose by, among other things, "regulating the laying out and construction of ways in subdivisions providing access to the several lots therein . . . [and by] securing

adequate provision for water, sewerage, drainage [and] underground utility services . . . ." G. L. c. 41, § 81M, as amended. General Laws c. 41, § 81U, is designed to further the overall purposes of the statute. That section as it existed at the time that the Lucci plan was submitted provided that "Before approval of a plan, a planning board shall require provision for the construction of ways and the installation of municipal services in accordance with the rules and regulations of said board, such construction and installation to be secured by one, or in part by one and in part by the other, of . . . [two methods, (1) a bond or deposit, and (2) a covenant] which method may be selected and from time to time varied by the applicant."

The plaintiff does not dispute the fact that it took the land subject to the Lucci covenant requiring the construction of ways and the installation of municipal services. It does claim, however, that the two-year time limitation within which the work must be completed and the provision for the automatic rescission of the approval for failure to so complete within that time are invalid. We do not agree. The Subdivision Control Law requires the local planning board to provide for ways and services. G. L. c. 41, § 81U. The execution of a covenant running with the land is specifically authorized. G. L. c. 41, § 81U. *Stoner* v. *Planning Bd. of Agawam,* 358 Mass. 709, 715. A requirement in a covenant fixing the time within which the work must be completed is, in our view, consonant with the purposes of the law. We believe that the authority for imposing such a time limit contained in the section of the statute concerned with securing performance by bond or deposit is equally applicable to the covenant portion of the statute.[2] A contrary result would impose a potentially

---

[2] General Laws c. 41, § 81U (1), as amended through St. 1958, c. 377, § 1, provides, in part, that "By a proper bond or a deposit . . . to secure performance of the construction of ways and the installation of municipal services . . . *and the planning board may require that the time be specified within which such construction and installation shall be completed*" (emphasis added). Section 81U (2) dealing with securing performance by covenant does not contain a provision similar to the one emphasized above.

greater burden on applicants who secure performance by bond or deposit than on those who execute covenants. The Legislature could not have had this difference in result in mind when it enacted § 81U. We also believe that a provision for automatic rescission where the initial approval was not final but rather conditional is within the board's authority.[3] In *Campanelli, Inc.* v. *Planning Bd. of Ipswich*, 358 Mass. 798, we held that the local planning board could rely on and enforce the provisions of a "conditional approval agreement" which limited the duration of the board's approval to the earliest of three dates. Furthermore, the *Campanelli* case holds that where a successor in title to the covenantor purchases land which had been conditionally approved with knowledge thereof and where no appeal was taken from the conditional approval, the successor in title will not be heard to question the validity of the conditional approval.

In the case at bar, no evidence was received at the trial which indicated that the provisions of the covenants (the completion of ways and installation of services within two years from the date of the last covenant) were satisfied.[4] That being the case, the conditional approval of the Lucci plan was not in effect at the time that the plaintiff submitted the Costanza plan in 1969. Since the latter plan was a "division of a tract of land into two or more lots," G. L. c. 41, § 81L, and none of the exceptions is applicable, it constitutes a "subdivision" and the board was within its authority in refusing to indorse it as requested by the plaintiff. The final decree must be reversed.

[3] We recognize that rescission of an unconditionally approved plan is governed by G. L. c. 41, § 81W, including the protections for grantees which are therein incorporated by reference. Nevertheless § 81U (2) also provides sufficient safeguards for the grantee of any lot which is subject to a conditional approval and automatic rescission. See *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 128–129; *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 170.

[4] The plaintiff brings to our attention by way of a footnote in its brief the fact that it has begun certain phases of the construction and installation required by the covenants. Such information is of no avail to the plaintiff, however, because (1) no such evidence was received at the trial, (2) partial performance does not satisfy the terms of the covenants, and (3) the time limit for performance has expired.

2. The defendant has also argued that the Lucci plan was erroneously approved because it was governed by the provisions of a newly approved by-law requiring greater area and frontage requirements. The new by-law became effective between the time that the Lucci plan was submitted to the board and the time that it was approved by the board. See *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1; *Ward & Johnson, Inc.* v. *Planning Bd. of Whitman*, 343 Mass. 466. In view of what we have said above, we need not decide whether the defendant's argument is correct on this issue.

3. The final decree is reversed. A new final decree is to enter declaring that the board was within its authority in refusing to indorse the plan and that no modification of its decision is required.

*So ordered.*