BENJAMIN F. MILES, SECOND, *vs.* PLANNING BOARD OF MILLBURY & another.[1] No. 89-P-367. August 30, 1990. *Subdivision Control*, Conditions, Decision of planning board.

The definitive subdivision plan before us, called "Clearview Estates," proposes to place some 276 duplex houses on 130 acres of land in Millbury now used as a golf course. A previous version of the plan was disapproved by the planning board; on appeal by the developer, the matter — in circumstances to be mentioned at point 3 below — was remanded by the Land Court to the planning board for further consideration. After public hearings, the planning board voted to approve the plan, subject to thirteen "conditions." Miles, an abutter, filed an appeal which was tried before a judge in the Land Court (on transfer from the Superior Court), the developer participating as an intervener. From a judgment declaring that the approval of the plan by the planning board did not exceed the authority of the board, the abutter appeals to this court. We examine the abutter's contentions, and affirm the judgment.

1. There was lengthy discussion of the plan and proposed conditions at the public hearings which took place on February 18 and March 3, 1988. The board voted to approve the plan subject to particular conditions. The conditions, however, had to be drafted in precise form. The chairman of the board, the former town planner (retained to assist the board), and counsel to the developer conferred for the purpose and a text was made ready by March 23, 1988. By inadvertence, a certificate signed by the board members, dated March 3, 1988, was filed with the town clerk on March 7, 1988, evidencing the board's vote on February 18, 1988, to approve the plan "with the following conditions: See attached sheets." The conditions were in fact not attached. They were filed with the town clerk on March 23, 1988.

[1]Francis J. Castagnetti, as trustee of Clearview Realty Trust, intervener.

(a) The abutter, appellant here, contends in effect that the plan includ-
ing its conditions was not legally approved by the board because it did not
vote approval of the conditions as finally drafted and filed with the town
clerk. The contention is answered in the opinion of the judge below:
"[T]here remains a question under the subdivision control law as to
whether the board again should have reviewed the conditions after they
had been finalized. I have carefully compared the language of the proposed
conditions as presented at the meeting and those finally adopted and find
no significant differences which would require me to vitiate the Board's
approval with the arguable result that the Plan had been constructively
approved." It may be added that the board evidently acquiesced, and still
does so, in the conditions as finally drafted and filed.

(b) The appellant complains of the irregularity of a filing of the plan in
two parts separated by sixteen days. Anyone going early to the papers in
the town clerk's office would learn that the plan was subject to conditions:
a searcher would not be deceived. It would make little sense to hold, be-
cause of the irregularity, that the filings did not count and are to be disre-
garded. A question might arise whether the appeal period ran from March
7 or March 23, but the point need not be labored to a conclusion. The
abutter in his amended complaint has duly attacked the plan with its con-
ditions. No one has questioned the timeliness of his appeal and there is no
indication of a problem on any one else's part.

The appellant cites *Windsor* v. *Planning Bd. of Wayland*, 26 Mass. App.
Ct. 650 (1988) (2-1 decision), but there the planning board was wholly
remiss in omitting to file any evidence of its conditional approval of the
plan before the expiration of the time prescribed by statute for a board's
final action. This resulted in constructive approval of the plan without con-
ditions, which would have to be undone by fresh proceedings before the
board. No such heroic misprision occurred in the present case.

2. In *Tebo* v. *Board of Appeals of Shrewsbury*, 22 Mass. App. Ct. 618
(1986), the court exposed the fallacy of a condition of a special permit
that "[b]efore commencing any operation [blasting and rock evacuation],
a detailed plan of dust control must be submitted to the Board for ap-
proval." *Id.* at 623. We were applying the thesis of *Weld* v. *Board of Ap-
peals of Gloucester*, 345 Mass. 376 (1963), which we restated in *Tebo* as
follows: "a permit granting authority in a zoning case (e.g., a board of
appeals) may not delegate to another board, or reserve to itself for future
decision, the determination of an issue of substance, i.e., one central to the
matter before the permit granting authority." 22 Mass. App. Ct. at 624.
The appellant argues that conditions 4 and 5 of the present plan relegate
drainage issues to prohibited "future decision" by the planning board of
Millbury. That is a mischaracterization. In each instance the developer is
required to measure up to a cognizable and reasonably definite standard
which the planning board has adopted; there has been no postponement of
the adoption of a standard or criterion. *Kiss* v. *Board of Appeals of*

*Longmeadow*, 371 Mass. 147, 159 (1976), is comparable: there "[t]he board's action was not merely an expression of an intent to issue the two [special] permits at some future date on the occurrence of some contingency; rather the action constituted the grant of the two special permits with language which required and compelled the applicants therefor to comply with specified lawful 'conditions and safeguards.' " Since the action of the Millbury planning board was obedient to the *Weld* proposition, we need not consider whether *Weld* applies as cogently to the approval of subdivision plans as to the issuance of special permits in the zoning field.[2]

The appellant complains also in the same sense of conditions 2, 9, and 11, and the answer is the same. (No. 11 is further mentioned below.)

3. As already noted, the planning board had earlier (February 27, 1987) disapproved the subdivision plan. This was on the stated basis that "[t]he Planning Board determined, under the authority granted by Section 1.01, and Section 7.02, 3c [of the board's subdivision rules and regulations], that it can be reasonably assumed that Park Hill Avenue [a public way adjacent to the subdivision] cannot safely provide access for the proposed subdivision." On appeal by the developer,[3] the Land Court judge held that the board's statement of the basis of disapproval was general and uninformative; it lacked adequate detail and specificity. See G. L. c. 41, § 81U; *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 445-446 (1981). Thus the board's decision could not stand. The judge went on to note that it had never been held that a subdivision plan could be disapproved on the sole ground of the inadequacy of an adjoining public way: the question was discussed but not decided in the *North Landers* case, 382 Mass. at 437 n.6. That case, however, indicated that the character of the road might be considered in passing on the plan as a whole. 382 Mass. at 437-438. Here, the Land Court judge observed, "zoning authorizes the proposed use, the public way is within the control of the municipal authorities and the plaintiff [developer] has offered to mitigate the inadequacies of the public way."[4] The Land Court's judgment of January 21, 1988,

---

[2]The opinion below remarked: "There is, of course, a completely different course of action envisioned by the respective statutes governing zoning and planning matters, and by their very nature the latter are much more conducive to a continuing interplay between applicant and board." The opinion also recognized what was said in *Tebo*, 22 Mass. App. Ct. at 624, that "[t]he *Weld* case is often cited but almost invariably distinguished."

[3]The developer Castagnetti appealed to the Land Court; the abutter Miles appealed to the Superior Court; Castagnetti intervened in the Superior Court action, and secured its removal to the Land Court, where it was dismissed because Miles was not "aggrieved" by the disapproval of the plan although he would have wished for broader grounds of disapproval.

[4]Section 7.02 of the board's subdivision rules and regulations dealt with disapproval of plans because of dangerous traffic conditions that might result from inadequacy of the proposed access or of the proposed way within the subdivision or of any of the ways adjacent to or providing access to the subdivision. The court said that § 7.02 was "not precise in the area of adequacy of abutting public ways," and taken

annulled the action of the board and directed the board to hold a public meeting on the plan within thirty days and take final action within forty-five days, with the court retaining jurisdiction. Then followed the public meetings, the board's approval, the abutter's appeal, and the present review here.

Among the now approved conditions are No. 10 which, subject to approval by the Department of Public Works, undertakes three traffic improvements regarding Park Hill Avenue, and No. 11, which calls for construction of a sidewalk along subdivision frontage on that avenue. These will mitigate the difficulties.

The Land Court holds the plan with its conditions to be within the substantive authority of the board and we see no reason to disagree.

*Judgment affirmed.*

*James M. Burgoyne* for the plaintiff.

*Kenneth J. Mickiewicz* (*James A. Kobe* with him) for the intervener.

---

alone might violate the criterion of *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329 (1962), that such a rule must not be too vague or general to inform owners about the standards they must meet. Here, however, the developer had interpreted the rule correctly, had secured a traffic study, and had responded to the board's concerns about Park Hill Avenue. So there was no present reason to invalidate § 7.02.